DECISION
Before this Court is an appeal from a Decision of the Zoning Board of Review of the Town of Lincoln (the Board) denying the Appellant BCO, Inc.'s (BCO) Application for a Special Use Permit to allow a multi-family use. BCO contends that the Board's Decision was arbitrary and capricious, and was not supported by the substantial evidence in the record. The Board and Intervenors James Haller and Muriel Haller (the Appellees) assert that BCO did not meet its burden of proof and that the Board's Decision was supported by substantial evidence in the record. Jurisdiction is pursuant to G.L. 1956 § 45-24-69.
 I Facts and Travel
On June 6, 2005, BCO purchased a two-family residence located at 74-76 Main Street in the Manville section of the Town of Lincoln, and otherwise known as Lot No. 10 on Tax Assessor's Plat No. 35. See HearingTranscript (Tr.), dated December 12, 2006, at 101, and Special UsePermit Application (Application), at 1. The property consists of an irregularly-shaped 23,845 square-foot corner lot that is bisected by a thirty-foot wide easement/right of way. *Page 2 Id. Application at 2 and Tr. at 7 and 12. The lot is located in an RG-7 zone where Multi-Family housing is a conditionally permitted use.Tr. at 6.
On June 14, 2006, BCO submitted an Application for a Special Use permit to "maintain existing 2 units and construct 5 additional town house style units." Application at 1. The development would involve tearing down an existing detached garage and replacing it with the proposed five new units. Tr. at 5. BCO did not seek any dimensional relief. On December 12, 2006, the Board conducted a duly noticed hearing on the Application.
BCO presented three expert witnesses to testify on its behalf. First to testify was land use planning and zoning consultant Edward Pimental.Tr. at 10. He testified that he had performed a reference neighborhood analysis of the area and that of the fifty-one properties in the analysis, sixteen were single-family residences, twenty-one were two family, four residences had four units, one had eight units, and one had twelve units. Id. at 13. In addition, he stated that a seven-family residence was under construction across the street from BCO's property.Id. Mr. Pimental stated that the proposed new structure would consist of five two-bedroom units. Id. at 14-15. The development also would provide parking spaces for nineteen vehicles, four of which would be located in garages and four in an unpaved area reserved for parking. See SitePlan.
According to Mr. Pimental, the Application met all of the criteria for a Special Use Permit set forth in the Zoning Ordinance for the Town of Lincoln (the Ordinance). Tr. at 16. Specifically, he testified that the proposal was consistent with the character of the neighborhood, and was in conformance with the Comprehensive Plan goal of achieving a balance of one-third multi-family homes to two-thirds single family homes.Id. at 18.
Next to testify was Wilbert L. Luetschwager who was a licensed real estate broker, a certified building official, and a certified real estate appraiser. See Exhibit 7 at 7 and Tr. at 23. *Page 3 
Mr. Luetschwager testified that he believed that the proposal would not have a detrimental effect on surrounding property values. Id. at 24-25. He further testified that the Application satisfied the Special Use Permit criteria set forth in the Ordinance and that because the majority of the surrounding properties consisted of two or more units, the development would fit into the neighborhood. Id. at 25-26. During cross-examination, Mr. Luetschwager admitted that he did not perform an independent analysis of the project; rather, he formed his opinion after reviewing the plans and attending work sessions. Id. at 69.
The last person to testify on behalf of BCO was traffic engineer Michael W. Desmond. Id. at 27. He anticipated that the proposal would result in a mere six-tenths of one percent increase in the volume of traffic on Main Street. Id. at 30. He further testified that the number and layout of the parking spaces met Ordinance requirements.Id. at 32 and 34. Mr. Desmond also stated that the layout "allows for safe movement of emergency vehicles. . . ." Id. at 31. He admitted that he did not account for snow removal in reaching his conclusions, but he theorized that snow could be placed in the reserved parking spaces as well as "stacked up along the edges and the parking lot. . . ."Id. at 38. Mr. Desmond stated that he relied upon a "trip generation" document to form his opinion. Id. at 77.
Before proceeding to the "public portion of the hearing," the Board's Chairman read into the record a report submitted by the Planning Board and drafted by its Technical Review Committee. Id. at 51. The report recommended approval of the Application with conditions; namely, that two units be dedicated to affordable housing and that a landscape plan be developed for approval. Id. at 51-52.
Thereafter, several objectors testified. James Haller stated that he had always understood that the area between the easement and Main Road was part of a neighborhood park and he felt *Page 4 
that the proposal would diminish property values.[1] Id. at 82 and 84. Carol Zadoronzy testified that there existed a "gentlemen's agreement" that the open space between the easement running through four neighboring duplexes and Main Road would remain undeveloped.Id. at 88. Rebecca Ferry read into the record a statement from her grandmother expressing concern about vehicle congestion, snow removal, and the destruction of her view. Id. at 91-93. Another objector, Janice Ferry, believed that the proposed structure was too large for the site and that it would "most definitely change the character of our neighborhood." Id. at 93-94. She also expressed concern about an increase in traffic along the easement and the noise that would be generated by air conditioners. Id. at 96. Muriel Haller submitted a notarized petition signed by thirty neighbors objecting to the Application.
At the conclusion of the hearing and subsequent discussion, the Board unanimously voted to deny the Application. Id. at 121. The Board later issued a written Decision on February 8, 2007 and an Amended Decision on February 9, 2007.[2]
In its Decision, the Board recited a summary of the proceedings that took place at the hearing. The Board then found as follows:
 "[B]ased upon the facts offered by the applicant through testimony at the hearing and based upon the Board's own inspection of the subject parcel and the testimony of the opposition that the application has failed to provide sufficient probative evidence which substantiates its claim for relief. In the absence of substantial and probative evidence that the proposed use will not alter the general character of the neighborhood, the Board finds that the proposed use will have a detrimental effect on the general character of the neighborhood, and that the applicant has not met its burden under the ordinance." Decision at 4.
The Board then concluded that "a total of seven (7) dwelling units was not in conformity with the general character of the neighborhood," and "the Board interpreted the zoning ordinance *Page 5 
not to allow two (2) primary residential structures on one lot in an RG-7 zone." Id. BCO timely appealed to this Court.
 II Standard of Review
The Superior Court's review of a zoning board decision is governed by § 45-24-69(d). Section § 45-24-69(d) provides:
 "The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory, ordinance or planning board regulations provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
When reviewing a decision of a zoning board, the trial justice "must examine the entire record to determine whether `substantial' evidence exists to support the board's findings." DeStefano v. Zoning Board ofReview of Warwick, 122 R.I. 241, 245, 405 A.2d 1167, 1170 (1979). The term "substantial evidence" has been defined as "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means [an] amount more than a scintilla but less than a preponderance." Lischio v. Zoning Bd. of Review of NorthKingstown, 818 A.2d 685, 690 n. 5 (R.I. 2003) (quoting Caswell v. GeorgeSherman Sand Gravel Co., 424 A.2d 646, 647 (R.I. 1981)). In conducting its review, the trial justice "may `not *Page 6 
substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact.'" Curran v. Church Cmty.Housing Corp., 672 A.2d 453, 454 (R.I. 1996) (quoting G.L. 1956 §45-24-69(d)). Thus, although the trial justice has "the authority to remand a case to the zoning board of review for further proceedings[,]" such remand "should be based upon a genuine defect in the proceedings in the first instance . . . or upon the fact that there is no record of the proceedings upon which a reviewing court may act." Roger WilliamsCollege v. Gallison, 572 A.2d 61, 62-63 (R.I. 1990).
The deferential standard of review that must be accorded a zoning board's decision "is contingent upon sufficient findings of fact by the zoning board." Kaveny v. Town of Cumberland Zoning Bd. of Review,875 A.2d 1, 7 (R.I. 2005). However, like administrative agencies, a zoning board's determinations of law "are not binding upon [the Court] and may be freely reviewed to determine the relevant law and its applicability to the facts presented in the record." Dep't of Envt'l Mgmt. v. LaborRels. Bd., 799 A.2d 274, 277 (R.I. 2002) (citing Carmody v. R.I.Conflict of Interest Comm'n, 509 A.2d 453, 458 (R.I. 1986)); see alsoPawtucket Transfer Operations, LLC, v. City of Pawtucket, No. 2006-272-M.P., slip op. at 5-6, 2008 R.I. LEXIS 40 (R.I., filed April 11, 2008). Accordingly, "[a]lthough factual findings . . . are afforded great deference, a dispute involving statutory interpretation is a question of law to which [the Court] appl[ies] de novo review."Rossi v. Employees' Retirement Sys. of the State of Rhode Island,895 A.2d 106, 110 (R.I. 2006) (citing In re Advisory Opinion to theGovernor, 732 A.2d 55, 60 (R.I. 1999)).
It is axiomatic that "rules of statutory construction apply equally to the construction of an ordinance." Pawtucket Transfer Operations,LLC, No. 2006-272-M.P., slip op. at 6 (quoting Mongony v.Bevilacqua, 432 A.2d 661, 663 (R.I. 1981)). Accordingly, the "clear and *Page 7 
unambiguous language in an ordinance [is accorded] its plain and ordinary meaning." Id. However,
 "when the provisions of a statute are unclear or subject to more than one reasonable interpretation, the construction given by the agency, or board, charged with its enforcement is entitled to weight and deference, as long as that construction is not clearly erroneous or unauthorized. This is true even when other reasonable constructions of the statute are possible. Id. (internal citation and footnote omitted).
It must be remembered, however, that "this Court `will not construe a statute to achieve meaningless or absurd results.'" Tidewater Realty,LLC v. State, Providence Plantations, 942 A.2d 986, 992 (R.I. 2008) (quoting Beaudoin v. Petit, 122 R.I. 469, 476, 409 A.2d 536, 540
(1979)).
 III Analysis
BCO contends that the Board's Decision was clearly erroneous in light of the reliable, probative, and substantial evidence in the record and it maintains that the evidence fully satisfied all of the requirements for a special use permit. The Appellees dispute these claims and urge the Court to affirm the Decision.
Article I, section 20-2 of the Ordinance defines a special use as a "regulated use which is permitted pursuant to the special use permit issued by the zoning board of review, article IX, special use permits." Article IX, section 20-202 sets forth the standards for granting a special use permit. It provides:
 "In granting a special use permit, the zoning board of review shall require evidence to the satisfaction of the following standards be entered into the record of the proceeding that:
 (1) The special use is specifically authorized by this chapter, and setting forth the exact subsection of this chapter containing the jurisdictional authorization; *Page 8 
 (2) The special use meets all of the criteria set forth in this chapter authorizing such special use;
 (3) The granting of the special use permit will not alter the general character of the surrounding area; and
 (4) The granting of the special use permit will not impair the intent or purpose of this chapter, nor the comprehensive plan.
Accordingly, an applicant for a special use permit must establish as a condition precedent that the relief sought is "reasonably necessary for the convenience and welfare of the public." Toohey v. Kilday,415 A.2d 732, 737 (R.I. 1980). To satisfy this mandatory standard, the applicant only must show that "`neither the proposed use nor its location on the site would have a detrimental effect upon public health, safety, welfare and morals.'" Id. (quoting Hester v. Timothy, 108 R.I. 376, 385-86,275 A.2d 403, 406 (1971)). In considering public health, this Court "should exercise restraint in substituting its judgment for the judgment of the zoning board which is based on the evidence before it." Hein v. Town ofFoster Zoning Bd. of Review, 632 A.2d 643, 646 (R.I. 1993) (quotingMendonsa v. Corey, 495 A.2d 257, 263 (R.I. 1985)). However, the way in which land is used "must be congruous with, tolerant of and have no adverse effects upon existing neighborhood uses." Hein, 632 A.2d at 646
(quoting Hendels Investors of Rhode Island, Inc. v. Zoning Board ofWesterly, 100 R.I. 264, 265, 214 A.2d 200, 202 (1965)).
The dispositive issue in this case is one of regulatory interpretation. BCO maintains that the Board erroneously interpreted the Ordinance as prohibiting the construction of more than one residential structure on a single lot with a multi-family use. It asserts that "[t]he express prohibition of more than one residential building with regard to single-family and two-family uses and its omission with regard to a multi-family use establishes the town council's intent not to impose such a prohibition with regard to the latter use." The Intervenors counter that the *Page 9 
omission of express language permitting more than one residential structure on one lot "should be interpreted to mean that the [t]own [c]ouncil intended to prohibit multiple residential units on one lot."
Article II, Section 20-33(2X) Ordinance regulates residential uses. It provides:
 "2.1 One dwelling unit or household unit as defined in this chapter. There shall be no more than one main residential building on any one lot. . . .
 2.2 Two dwelling units or household units as defined in this chapter, including semi-detached structures. There shall be no more than one main residential building on any one lot.
 2.3 Three or more dwelling units or household units." Article II, Section 20-33(2X).
In its Decision, "the Board interpreted the zoning ordinance to not allow two (2) primary residential structures on one lot in a RG-7 zone."Decision at 4. Although this interpretation may be correct, this Court need not resolve that particular issue in its de novo review.
This case involves a single lot with an existing two-family residence. The clear and unambiguous language of the Ordinance expressly prohibits more than one residential structure on a lot with a two-family use.See Article II, Section 20-33(2X) 2.2. Although it is conceivable that by its silence, Article II, Section 20-33(2X) 2.3 might permit more than one residential structure for a multi-family use on a single undeveloped lot in an RG-7 zone, such a situation did not exist in the instant matter.[3]
In view of the clear and unambiguous language of the Ordinance prohibiting more than one residential structure on a lot with a two-family residence, the Court concludes that the Board did not err in denying BCO's Application for a Special Use Permit. See Hagenbergv. *Page 10 Avedisian, 879 A.2d 436, 443 (R.I. 2005) (acknowledging that the Court can affirm a judgment on different grounds than those relied upon by the lower tribunal). Indeed, had the Board granted BCO a Special Use Permit by allowing a current two-family use to be transformed into a multi-family use and thereby evade the clear and unambiguous mandates of the Ordinance, the Board would have acted unlawfully and in excess of its authority, and such an interpretation would have produced an absurd result that this Court could not condone.
 IV Conclusion
After a review of the entire record, this Court concludes that Decision of the Board was not in violation of statutory or constitutional provisions, or made upon unlawful procedure. The substantial rights of the Appellants were not prejudiced. Accordingly, this Court denies the Appellants' appeal.
Counsel shall submit an appropriate order consistent with this opinion.
[1] A title search revealed that the area in question has never been designated as a park or an open space. Tr. at 109.
[2] The amendment simply corrected a typographical error.
[3] The Court notes that a strict construction of the Ordinance in favor of the landowner might support such a result. See Denomme v.Mowry, 557 A.2d 1229, 1231 (R.I. 1989) (stating that the Court must "resolve all doubts and ambiguities contained in the zoning laws in favor of the landowner because these regulations are in derogation of the property owner's common-law right to use her property as she wishes").