DECISION
Carol Hagan McEntee appeals the February 16, 2010 decision of the Narragansett Zoning Board of Review. In that decision, the Board granted certain zoning relief to Jason Macari and Martha Anne Macari for the property at 310 Colonel John Gardner Road. This Court has jurisdiction pursuant to G.L. 1956 § 45-24-69. For the reasons set forth below, the Board's decision is remanded for further findings.
 I FACTS AND TRAVEL
Mr. and Mrs. Macari are the current owners of the subject property, which is located in the Bonnet Shores area of Narragansett on Lot 591 of Assessor's Plat N/S. They are seeking improvements to the existing dwelling on the property through construction of a twenty-four by thirty-two foot garage addition and an eight by sixteen foot enlargement of the kitchen and dining area, among other improvements. Def.'s Ex. 1, 5. *Page 2 
The existing dwelling was built by the prior owners of the Macari property, Mr. and Mrs. Jan Huyck. In order to construct the existing dwelling, Mr. and Mrs. Huyck sought relief from the Board through an application for a special exception and dimensional variances. On September 7, 1989, under the previous enactment of the Town of Narragansett Zoning Ordinance, [1] the Board granted Mr. and Mrs. Huyck four dimensional variances: (1) 115 feet from the Type I waters setback; (2) seventy feet from the coastal feature setback; (3) ninety-five feet from the septic tank setback; and (4) five feet from the front yard setback.[2] Def.'s Ex. 4. In addition, the Board granted Mr. and Mrs. Huyck a special use permit to construct a dwelling in the coastal resources overlay district.[3] Id. Both forms of relief were made subject to the condition that the construction be in "strict accordance with the site and building plans approved by the Board."[4] Id.
At 38,158 square feet, the lot is larger than the minimum 20,000 square feet required for the R-20 Medium Density Residential Zone in which it is located. See Zoning Ordinance § 6.4. It has a lot frontage of fifty-one feet and a depth of *Page 3 
approximately 200 feet. The property is also bordered to the rear by a shoreline feature, the edge of a coastal cliff.
On the first floor, a two-car garage addition to the east side of the house is proposed, measuring approximately twenty-four by thirty-two feet. The kitchen and dining area would be expanded outwards toward the rear of the house, with the additional area measuring sixteen feet in width and eight feet in depth.
Following the Town of Narragansett Planning Board's approval of the project and the proposed onsite water treatment system ("OWTS"), Mr. and Mrs. Macari presented their application for zoning relief on July 16, 2009. In their application, Mr. and Mrs. Macari requested a special use permit to construct additions within the coastal resources overlay district.[5] Additionally, they requested a special use permit to amend prior site plan approvals by the Board for the existing dwelling. According to the Town of Narragansett Zoning Ordinance, such amendments required application for a new special use permit.See Zoning Ordinance § 12.5. A public hearing was held on October 29, 2009 at which several witnesses testified in support of and in opposition to the proposed project.
Oddly, no site plan was attached to the original application to the building inspector, although it is referenced. No clear site plan is in the exhibits, but various sketches are included. Exhibits 1 and 5, which were submitted to the Board at the hearing, show different plans for the garage — one showing a twenty-four by sixteen foot garage, the other showing a twenty-four by thirty-two foot garage, respectively. The *Page 4 
description of the proposal set forth below is from exhibit 5, which does not show setback lines.
The Board discussed the evidence and, on December 29, 2009, voted unanimously to accept certain findings of fact. Significantly, the Board accepted the Town Solicitor's determination that the property did not represent a nonconforming use, but rather a specially permitted use. At the same hearing, the Board unanimously approved the relief requested by Mr. and Mrs. Macari. A written decision was recorded with the Town of Narragansett on February 16, 2010. Ms. McEntee filed a timely appeal to this Court on February 21, 2010.
 II STANDARD OF REVIEW
G.L. § 45-24-69(a) provides this Court with the specific authority to consider appeals brought by aggrieved parties from decisions of a zoning board of review. When a zoning board decision is properly before this Court, the standard of review is governed by § 45-24-69(d).[6]
In conducting its review, this Court "may `not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact.'" Curran v. Church Community HousingCorp., 672 A.2d 453, 454 (quoting § 45-24-69(d)). *Page 5 
The Court "must examine the entire record to determine whether substantial evidence exists to support the board's findings." SalveRegina College v. Zoning Board of Review of City of Newport,594 A.2d 878, 880 (R.I. 1991) (quoting DeStefano v. Zoning Board ofReview of Warwick, 122 R.I. 241, 245, 405 A.2d 1167, 1170 (1979)). Regarding questions of law, however, this Court conducts a denovo review. Pawtucket Transfer Operations, LLC v. City ofPawtucket, 944 A.2d 855, 859 (R.I. 2008).
 III DISCUSSION
As an initial matter, Ms. McEntee avers that the proposed additions constitute an impermissible expansion of a nonconforming structure because the distance from the existing dwelling to the street is less than that required by the Ordinance.[7] Essentially, she argues that because of this condition, the dwelling is a nonconforming structure and the planned additions constitute an expansion of the nonconformance. The Ordinance defines nonconformance as "[a] building, structure, or parcel of land, or use thereof, lawfully existing at the time of the adoption or amendment of a zoning ordinance and not in conformity with the provisions of such ordinance or amendment." Ordinance § 2.2.
In Rhode Island, zoning relief granted before the enactment of a zoning ordinance cannot form the basis for nonconformance after the enactment of a new zoning ordinance when the terms of such new ordinance did not cause the initial inconsistency. In Health Havens,Inc. v. Zoning Board of Review,101 R.I. 258, 259-60, 221 A.2d 794, 796 (1966) the petitioner's predecessor in title was granted an exception in 1959 to erect a nursing home on a certain parcel of land. The petitioner later sought to expand the nursing home *Page 6 
pursuant to provisions contained in the East Providence zoning ordinance. The zoning board treated the petitioner's application as one for an exception or variance and denied the request. Because the original exception was granted prior to adoption of the 1963 revised zoning ordinance, the Court considered petitioner's use "conditionally permitted" and not a nonconforming use. The Court stated that the revised ordinance was not the adoption of a new ordinance — rendering all previously granted exceptions and variances nonconforming uses — it was merely a continuation of the original ordinance.
Here, the condition that caused the existing dwelling to be inconsistent with the Ordinance was the distance from the front of the existing dwelling to the street. Such distance was allowed by the 1989 dimensional variance from the front yard setback requirement found in the previous zoning ordinance and the 1994 enactment. The Ordinance did not create the initial inconsistency with the zoning regulations. The 1994 enactment was merely a continuance of the previous zoning ordinance. Accordingly, the existing dwelling is not a nonconforming structure.
Ms. McEntee further relies on Cohen v. Duncan,970 A.2d 550 (R.I. 2009) for the proposition that a nonconforming use may not be expanded to increase the extent of a zoning inconsistency. Such reliance is misplaced. In Cohen, an owner sought modification of a building that was used for a hotel and located in a residential zone, arguably, expansion of a nonconforming use. The case at bar concerns a proposed expansion of a residence in a residential zone.
The Cohen case is inapplicable to this case in two respects. First, Cohen concerned nonconformance in the context of a use that was prohibited by a zoning ordinance, before the enactment of which such use was permitted. As has been shown, *Page 7 
nonconformance does not apply to the property in this case. Second, even if the property were considered nonconforming by dimension,Cohen concerned the expansion of a nonconforming use. In this case, the existing dwelling is being used for the very purpose for which the property was zoned — residential use.
 A. Abuse of Discretion
Ms. McEntee suggests the Board impermissibly granted dimensional relief. The Board summarily stated in its decision that it:
 grant[ed] the requested relief under Chapter 731, a 175' variance and special use permit from Section 4.4 Coastal Resources Overlay District, and a special use permit from Section 12.5 Amendments to a previous Zoning Board Decision . . . [and] Staff Reviews[.]
However, Mr. and Mrs. Macari did not request dimensional relief in their application to the Board. In the application itself, Mr. and Mrs. Macari specified in two places that their request was for a special use permit rather than a variance. In fact, the testimony adduced at the October 29, 2009 hearing illustrates that Mr. and Mrs. Macari, through their attorney and several witnesses, were emphatically not requesting either a dimensional or use variance in the application:
 [Counsel]. [O]ther than the overlay districts, are any variances required from this zoning board for this application?
 [Mr. Carrigan]. No.
 . . . .
 The Chairman: No variances required?
 Mr. Karpowicz: Correct.
 . . . .
 Mr. Godfrey [explaining his report in Exhibit 7]:
 I tried to identify what's readily available in the public record, what the applicants are seeking, and the *Page 8 
criteria for those to be granted that relief [sic]. In this case, it's a special use permit.
 . . . .
 [Counsel]: It requires no variances. The only thing it requires is a special use permit for the overlay district.
 . . . .
 [Counsel]: I just want the board to understand that we're not asking for any variances." Oct. Tr. 7, 15, 19, 31, 42.
Yet, the Board granted Mr. and Mrs. Macari a 175 foot dimensional variance from the coastal resources overlay district.[8]
The Ordinance indicates that the setback requirements of § 6.5 apply to substandard lots of record and specify twenty-five foot front and rear yard setbacks and ten foot setbacks for side yards. The Ordinance defines a `substandard lot of record' as "[a]ny lot lawfully existing at the time of adoption or amendment of a zoning ordinance and not in conformance with the dimensional and/or area provisions of that ordinance." Zoning Ordinance § 2.2. Therefore, because the Ordinance specifies a lot width of 100 feet for any lot in an R20 zone and the Property has a frontage of fifty-one feet, the property is a substandard lot of record; thus Mr. and Mrs. Macari are allowed twenty-five foot front and rear yard setbacks. See Zoning Ordinance § 6.5.
Whether or not a dimensional variance was necessary is challenging to discern. Distances to the lot lines are not shown on Mr. and Mrs. Macari's exhibits. The distance to the street, before or after the improvements, is not readily discernable. The distance to the top of the cliff is just as vague. The Board made no specific findings of fact concerning those distances, nor does it appear to have had any evidence to do so. Thus, *Page 9 
the Board granted relief beyond that which Mr. and Mrs. Macari requested in their application. Such action constitutes a violation of Ordinance provisions and was in excess of the Board's statutory authority.See Newton v. Zoning Board of Review of City of Warwick,713 A.2d 239, 241 (R.I. 1998).
 Coastal Overlay Limitations
The existing dwelling is located within the coastal resources overlay district, as designated in § 4.4 of the Ordinance. Seesupra n. 2. The necessity for a special use permit for construction in the coastal resources overlay district is elucidated in §§ 4.1 and 4.4 of the Ordinance, which state in pertinent part:
 4.1. Districts explained.
 This ordinance establishes overlay districts encompassing areas of the town where natural physical limitations render the land unsuitable for development without restrictions . . . All development in such areas constitutes a special use and requires site plan review and approval[.]
 . . .
 4.4. Coastal resources overlay district.
 . . .
 (b) Special use permit uses. The zoning board of review may grant a special use permit following site plan review and approval for the following activities in the coastal resources overlay district, provided the proposed project or activity complies with all applicable development standards and other requirements imposed by this ordinance and by the state coastal resources management council.
 . . .
 (3) Constructing structures, roads, parking areas, or other facilities;
 . . .
 (4) Installing sewer lines, individual sewage disposal systems, or other underground utilities[.] Zoning Ordinance §§ 4.1, 4.4.
There is no question that the property is in a coastal resources overlay district. See § 4.4(a)(iii). Nor is there question that the proposed additions would lay within the *Page 10 
zone. In fact, the map in exhibit 1 illustrates that the line approximating a fifty foot distance from the coastal cliff appears to pass directly through the existing dwelling. As there is no evidence showing that the proposed additions would not encroach into either the rear or side yard setbacks, or into the area beyond that which was allowed by the 1989 dimensional variance from the front yard setback, the Board had insufficient evidence to grant the relief in this case.Hopf v. Bd. of Review of City of Newport,120 R.I. 275, 230 A.2d 420 (1967) (stating conclusional or insufficient evidence warrants reversal of zoning board decision).
The Board also failed to address several requirements for granting a special use permit for construction within a coastal resources overlay district. Section 4.4(c) of the Ordinance imposes eight requirements that must be met in order for the Board to approve construction within a coastal resources overlay district.[9] The eighth requirement mandates a 100 foot buffer between the shoreline and all buildings and other structures. *Page 11 
 "[a] 100-foot wide buffer is required for . . . areas fronting on . . . natural shoreline features in the coastal resource overlay district. Within these buffer areas all structures, roads, individual sewage disposal systems are prohibited, except as allowed by section 16 of this ordinance." Zoning Ordinance § 4.4(c)(8).
Section 16 states the eligibility requirements for zoning board staff review of such a project. It reads in pertinent part:
 2. Eligibility. Projects eligible for staff review are limited to the following activities:
 (a) Construction projects or site alterations within the . . . coastal resource overlay district (section 4.4) that are located 50 feet or more from the edge of the . . . inland edge of the coastal feature.
 (b) Construction within 50 feet of the . . . inland edge of coastal feature as defined in section 4.3 or 4.4 when the construction is no closer to the coastal[] feature than existing construction on the lot.
 (c) Amendments to site plans of a previously approved application for a variance or special use permit where the amended site plan is in substantial conformance with the originally approved site plan, no additional relief from the provisions of this ordinance are required, and the record shows no objectors were present at the public hearing. Only one staff review amendment may be approved before a new public hearing is required. Zoning Ordinance § 16.1(2).
There is no discussion of either the eighth requirement of § 4.4(c) or the eligibility of the project for staff review in the transcript of the October 29, 2009 hearing, the exhibits, or the Board's decision.[10] There is no discussion of the 100-foot coastal buffer required by § 4.4(c)(8). The record is also devoid of any discussion of the criteria which provides for staff review of any construction within fifty feet of the coastal feature only *Page 12 
"when [such] construction is no closer to the coastal feature than existing construction on the lot." Zoning Ordinance § 16.1(2)(b).
Moreover, § 16.1(2)(c) addresses the requirements for site plan amendment. As discussed, Mr. and Mrs. Macari presented their application for a special use permit pursuant to § 4.4(c) and for amendments to the site plan that had been approved for the prior owners in 1989. Def.'s Ex. 4. To the extent the Board granted such amendments pursuant to §§ 4.4(c) and 16.1(2)(c), it neglected to find whether "the amended site plan [was] in substantial conformance with the originally approved site plan, no additional relief from the provisions of this ordinance [were] required, and the record show[ed] no objectors were present at the public hearing."[11] Zoning Ordinance § 16.1(2)(c).
While much of the proposed project may be more than fifty feet from the coastal feature, with reference to the project layout, it is clear that part of the garage addition is within fifty feet of the coastal feature and "closer to the coastal[] feature than [the] existing construction on the lot." See Zoning Ordinance § 16.1(2)(a)-(b); Def.'s Ex. 1. It is unclear whether the addition onto the kitchen and dining area is within fifty feet of the coastal feature, but the issue was worthy of some finding of fact. Instead, these issues were avoided entirely.
 Special Use permit
In addition to the requirements in § 4.4(c) for construction within the coastal resources overlay district, § 12.5 of the Ordinance sets general requirements for issuance *Page 13 
of any special use permit.[12] The Board's decision addresses requirements (2) and (5) with supporting factual references. However, the Board's decision is devoid of any discussion of the other four requirements in § 12.5. While the Board suggests "Godfrey's written report addresses both the Section 4.4 — Development Standards, and Section 12.5 — Special Use Permit Standards," the report is scant on pertinent facts and jumps to legal conclusions. For example, the Board's decision omitted these requirements addressed in Godfrey's report:
 1. The proposed plan complies with the applicable requirements and performance standards [of § 4.4(c)].
 * * * 3. The granting of the special use permit would serve the public convenience and welfare.
 4. There is no aspect of the use that would pose a threat to the public health, safety, or moral welfare.
 * * * 6. There is no part of this plan that would inappropriately impede access to air, light, views or solar access [sic]. As with any development and particularly in high-density neighborhoods as Bonnet Shores, nearby and surrounding properties will likely have altered view corridors. *Page 14 
There will be no impact on public access to water bodies, rivers or streams. There are no adverse elements with regards to conservation of energy or energy efficiency. Def.'s Ex. 7 at 8-9.
There is no indication that the Board considered all requirements for construction in the coastal resources overlay district found in §§ 4.4(c), 16.1(2), and 12.5 of the Ordinance. Accordingly, the Board acted in violation of Ordinance provisions and, without sufficient findings of fact, the action is in excess of the Board's statutory authority. See Melucci v. Zoning Bd. of Review of City ofPawtucket, 101 R.I. 649, 563, 226 A.2d 416, 419 (R.I. 1967) (concluding that a zoning board erred by granting a special use permit without addressing all the requirements for which in its decision).
 B. Adequacy of the Board's Written Decision
Our high Court has long held that "a zoning board of review is required to make findings of fact and conclusions of law in support of its decisions in order that such decisions may be susceptible of judicial review." Cranston Print Works Co. v. City ofCranston, 684 A.2d 689, 691 (R.I. 1996) (quoting Thorpe v.Zoning Board of Review of North Kingstown,492 A.2d 1236-37 (R.I. 1985)). The Rhode Island Supreme Court has said:
 [The reviewing court] must decide whether the board members resolved the evidentiary conflicts, made the prerequisite factual determinations, and applied the proper legal principles. Those findings must, of course, be factual rather than conclusional, and the application of the legal principles must be something more than the recital of a litany. These are minimal requirements. Unless they are satisfied, a judicial review of a board's work is impossible. Irish Partnership v. Rommel, 518 A.2d 356, 358-59 (R.I. 1986) (quoting May-Day Realty Corp. v. Board of Appeals of Pawtucket, 107 R.I. 235, 239, 267 A.2d 400, 403 (1970)). *Page 15 
"When the board fails to state findings of fact, the court will not search the record for supporting evidence or decide for itself what is proper [under] the circumstances." Bernuth v. Zoning Board of Reviewof Town of New Shoreham, 770 A.2d 396, 401 (R.I. 2001).
Here, it is evident that the Board made proper findings of fact specifically addressing some requirements, while ignoring others. Requirements (1) through (7) of § 4.4(c) are addressed in findings of facts 19 through 25 of the written decision. Requirements (2) and (5) of § 12.5 address findings of facts 30 and 31 of the written decision. Thus, the decision lies fallow and ignores the other requirements.
Accordingly, while the Board's decision appears sufficient with regard to the requirements it discussed, it did not address all of the necessary requirements in the Ordinance and is, therefore, insufficient on those grounds and its decision was in violation of Ordinance provisions and in excess of its statutory authority.
 IV CONCLUSION
After review of the entire record, this Court remands this matter to the Board for further findings of fact and conclusions of law addressing the Ordinance requirements. Counsel for Ms. McEntee shall submit the appropriate order for entry within ten days of the date of issuance of this Decision.
[1] The Town of Narragansett enacted a new Zoning Code in 1994. The relief granted in 1989 was from the prior zoning ordinance.
[2] Section 4.4 of the Zoning Ordinance defines the coastal resources overlay district:
 (a) District defined. The coastal resources overlay district is composed of . . . (ii) shoreline features including coastal beaches and dunes, barrier beaches, coastal cliffs, bluffs, and banks, rocky shores, and manmade shorelines; and (iii) areas contiguous to shoreline features extending inland for 200 feet ("contiguous areas"), as these lands and waters are defined by the state coastal resources management council. . . . Zoning Ordinance § 4.4(a).
[3] The term `special use permit' is the currently accepted descriptor of the form of relief that the Board denoted a `special exception' in 1989.
[4] The Board subsequently made several Minor Site Plan Amendments for the removal of a cantilevered rear deck, installation and maintenance of footpaths for public shoreline access, addition of a denitrification system, construction of a shed and deck addition, and a change in the buffer plan along the east side of the property.
[5] It is not clear from the defendants' exhibits how the 200 foot coastal resources overlay district relates to the locations of the shoreline feature and the proposed additions. Again, setback distances are not clearly illustrated. However, the Board specifically found that "[t]he closest point of the proposed construction [would] be located approximately twenty-five feet from the edge of the [shoreline] feature."
[6] A Superior Court may remand, reverse or modify a decision of the zoning board only if "substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:
 (1) In violation of constitutional, statutory, or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. Id.
[7] There is a distinction between `nonconformance' as a legal conclusion and `nonconformance' as a mere description for a condition that is inconsistent with a zoning regulation. This Court will refer to the latter as an `inconsistency.'
[8] The result differed significantly from the original application and public notice.
[9] 4.4 Coastal resources overlay district
 (c) Development standards. Any proposed use or development in a coastal resources overlay districtmust comply with the following development standards:
 (1) The proposed project will not interfere with public access to or use and enjoyment of tidal waters and shorelines features;
 (2) The proposed project will not degrade the aesthetic and recreational values of tidal waters or diminish the natural diversity of shoreline features;
 (3) The proposed project will not degrade existing water quality or adversely affect the circulation and flushing patterns of tidal waters, or diminish the value of tidal waters and shoreline features as habitats for fish, shellfish, wildlife, and wildfowl;
 (4) The proposed project will not increase the volume or velocity of storm water runoff or sedimentation of tidal waters or exacerbate the potential for shoreline erosion or flooding;
 (5) The proposed project will not diminish the value of any shoreline feature as a storm and hurricane buffer;
 (6) Any filling, grading, excavating, and other land alteration will be the minimum necessary to construct the proposed project;
 (7) The proposed project will not pose any threat to public health, public safety, or property;
 (8) Except for foot paths and selective thinning of vegetation for view corridors as approved by CRMC, a 150-foot wide natural undisturbed buffer drawn from the inland edge of the coastal feature shall be required for `areas of critical concern' and `self sustaining lands' as these areas are defined by CRMC, and lands adjacent to Wesquage Pond and other poorly flushed estuarine areas. A 100-foot wide buffer is required for other areas fronting on other natural shoreline features in the coastal resource overlay district. Within these buffer areas all structures, roads, individual sewage disposal systems are prohibited, except as allowed by section 16 of this ordinance. Zoning Ordinance § 4.4(c).
[10] After listing Mr. Carrigan's legal conclusions and supporting facts pertaining to the first seven requirements of § 4.4(c), there is a conspicuous absence in the board's findings of fact, of any conclusion on the eighth requirement, and whether the project was eligible for staff review. This appears to be an intentional omission, to avoid addressing the strict legal prerequisites.
[11] It is particularly troubling that the Board, nevertheless, granted "additional relief" in the form of the 175-foot variance from the coastal resources overlay district. Id. Although it has been shown that such relief was neither requested nor required, such action by the Board would have required it to conform to § 16.1(2)(c). The granting of this relief merely highlights the Board's abuse of discretion.
[12] Standards to be met.
The zoning board of review may not grant a special use permit unless it finds the following:
 (1) That the use will comply with all applicable requirements and development and performance standards set forth in sections 4 and 7 of this ordinance; except that the board may grant a variance from dimensional setbacks incorporated in the development standards of section 4.3(4) of the coastal and freshwater wetlands overlay district, and section 4.4(c) of the coastal resources overlay district, in accordance with the requirements of section 11 of this ordinance;
 (2) That the use will be in harmony with the general purpose and intent of this ordinance and the comprehensive plan of the town of Narragansett;
 (3) That the granting of the special use permit will substantially serve the public convenience and welfare;
 (4) That the use will not result in or create conditions inimical to the public health, safety, morals, and general welfare;
 (5) That it will not substantially or permanently injure the appropriate use of surrounding property;
 (6) In addition to the above, the zoning board of review shall consider:
 a. Access to air, light, views, and solar access.
 b. Public access to water bodies, rivers and streams.
 c. The conservation of energy and energy efficiency.
The zoning board of review may not extend or enlarge a special use permit except by granting a new special use permit. Ordinance § 12.5.