Issued April 13, 2021

Corrected April 15, 2021

**Supreme Court**

No. 2018-65-M.P.
(WC 15-161)

The New Castle Realty Company     :

v.     :

Raymond Dreczko, Jr., in his capacity   :
as member of the Town of Charlestown
    Zoning Board of Review, et al.     :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

The New Castle Realty Company     :

          v.             :

Raymond Dreczko, Jr., in his capacity   :
as member of the Town of Charlestown
   Zoning Board of Review, et al.     :

Present: Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

## O P I N I O N

**Chief Justice Suttell, for the Court.** This Court issued a writ of certiorari to review a Superior Court judgment affirming a decision by the Town of Charlestown Zoning Board of Review (the zoning board).[1] The plaintiff, New Castle Realty Company (New Castle), had applied to the zoning board for a special-use permit and a dimensional variance to build a house and install a septic system on a preexisting nonconforming lot located on Timber Ridge Road in Charlestown, Rhode Island (the parcel). The zoning board denied both the special-use permit and dimensional variance, and the Superior Court affirmed. For the reasons stated herein, we affirm in part and quash in part the judgment of the Superior Court.

---

[1] The named defendants in this case are the members of the Town of Charlestown Zoning Board of Review, in their official capacities.

# I

## Facts and Travel

The essential facts of this case are not in dispute. New Castle is the owner of the 1.9 acre parcel that was part of a larger subdivision created in 1974, when the minimum lot size was one acre. The Town of Charlestown (the town) subsequently opted to require that lots in that zone be at least three acres, rendering the parcel nonconforming.

On January 14, 2015, New Castle filed an application with the zoning board for a special-use permit to install a septic system within one hundred feet of wetlands and a dimensional variance from front- and side-yard requirements for placement of a house on the parcel. On July 29, 2014, prior to filing the application, New Castle had acquired a permit from the Rhode Island Department of Environmental Management (DEM) to alter freshwater wetlands.

Richard Greene, a land surveyor, and William Lampe, the president of New Castle, appeared before the zoning board on March 17, 2015. Greene indicated that most of the parcel consisted of "wooded swamp" except for a small area near the street, where the proposed house and septic system would be located.[2] Greene

---

[2] One of the zoning board members indicated that the size of the buildable area outside of the wetlands was "60x60" with the back of the proposed house ten feet from the wetlands and the left side of the house ten feet from the wetlands. Greene did not dispute this characterization.

informed the zoning board that DEM had already approved New Castle's application to allow the house and septic system to be placed in the area near the wetlands, and that the plan presented to the zoning board was the same plan that went to the "Inland Wetlands Section of the State of Rhode Island."

Greene testified that, after receiving approval of the wetlands application, New Castle acquired a permit from DEM for the construction of a septic system, referred to as an onsite water treatment system (OWTS). He indicated that the OWTS would be placed as far as possible from the wetlands edge and that it was a "denitrification system ADVANTAX AX20 with a bottomless sand filter which cuts down on the amount of nitrates that are put into the bottomless sand filter to help meet the environmental aspects of the lawn." Greene testified that with the two approvals from DEM and the size of the structure, the proposed plan met the criteria needed for a special-use permit and dimensional variance for the house.

After questioning Greene and Lampe about the OWTS and the placement of the house, the zoning board discussed the application before voting 4 to 1 to deny both the special-use permit and the application for a dimensional variance. The zoning board notified New Castle of its decision by letter. The letter contained a list of each member's vote along with the individual reasoning for each member's vote.

On April 2, 2015, New Castle filed a complaint in Washington County Superior Court appealing the zoning board's denial of both the special-use permit

and the dimensional variance. New Castle asserted, in support of its complaint, that the zoning board's denial of the special-use permit was arbitrary because of its "baseless second-guessing of DEM's approval of the septic system[.]" New Castle argued that the zoning ordinance applies "no greater standards to approve a septic system than does DEM[,]" and that, therefore, DEM's approval meant that the standard to approve the special-use permit was *ipso facto* also satisfied. New Castle reasoned that the zoning board could not reject DEM's approval unless there was credible evidence from qualified experts that the system under review would not serve the public interest.

As to the dimensional variance, New Castle contended that the zoning board misapplied the law when it found that New Castle's hardship was self-created and that New Castle did not seek the least relief necessary. New Castle argued that, because the lot satisfied all pertinent zoning ordinances when the subdivision was created in 1974, the hardship was not self-created. New Castle additionally argued that it sought the least relief necessary because of the small size of the proposed house.

In response, the zoning board argued that DEM's approval of the OWTS did not require the zoning board to approve a special-use permit. The zoning board asserted that its decision to deny the special-use permit was supported by substantial evidence. With regard to the dimensional variance, the zoning board argued that,

because New Castle failed to consider alternatives, such as moving the house farther back or proposing a smaller house, substantial evidence supported the zoning board's decision.

The trial justice issued a written decision on January 3, 2018. At the outset, the trial justice addressed New Castle's argument that the zoning board's decision lacked sufficient findings of fact and conclusions of law in violation of G.L. 1956 § 45-24-61. Although the trial justice found that the zoning board had "fail[ed] to enumerate specific findings of fact as required by § 45-24-61(a)[,]" he decided to "cull[] those findings from the record[,]" and he ultimately found that the zoning board had made "sufficient findings addressing each element required under Sec. 218-23 of the Charlestown Zoning Ordinance."

The trial justice next addressed the issue of the special-use permit. With regard to New Castle's argument that the zoning board's decision was contrary to DEM's expertise, the trial justice determined that zoning board members are entitled to rely on their own knowledge in zoning matters. He further determined that a zoning board's responsibility is distinct from that of DEM and that in this case "there were various other factors considered by the [zoning b]oard in the approval of a special-use permit which were not considered by DEM in issuing their approval."

The trial justice then addressed the issue of the dimensional variance. The trial justice determined, in contravention of the zoning board's decision, that the

hardship was not self-created because the parcel conformed to zoning regulations at the time it was formed. He agreed with the zoning board, however, that the requested relief was not the least relief necessary under the circumstances and noted that New Castle was unwilling to consider suggestions from the zoning board regarding moving the house farther from the wetlands or reducing its size.

Accordingly, a judgment affirming the decision of the zoning board was entered on February 19, 2018. New Castle filed a petition for writ of certiorari on March 2, 2018, and the Court granted the petition on March 18, 2019.

## II

### Standard of Review

"On a petition for certiorari from a Superior Court judgment that has entered after an appeal from a municipal zoning board's decision, we confine our review to a determination of whether the trial justice acted within his or her authority as set forth in § 45-24-69." *Iadevaia v. Town of Scituate Zoning Board of Review*, 80 A.3d 864, 870 (R.I. 2013) (quoting *Sciacca v. Caruso*, 769 A.2d 578, 582 (R.I. 2001)). Section 45-24-69(d) provides:

> "The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:

"(1) In violation of constitutional, statutory, or ordinance provisions;

"(2) In excess of the authority granted to the zoning board of review by statute or ordinance;

"(3) Made upon unlawful procedure;

"(4) Affected by other error of law;

"(5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or

"(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."

"When reviewing a trial court's zoning decision, this Court 'does not weigh the evidence; instead we review the record to determine whether substantial evidence existed to support the Superior Court justice's decision.'" *Iadevaia*, 80 A.3d at 870 (brackets omitted) (quoting *Pawtucket Transfer Operations, LLC v. City of Pawtucket*, 944 A.2d 855, 859 (R.I. 2008)). "Substantial evidence is defined as 'such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means an amount more than a scintilla but less than a preponderance.'" *Id.* (brackets omitted) (quoting *Pawtucket Transfer Operations*, 944 A.2d at 859). "We do not reverse a Superior Court justice's decision unless it can be shown that the justice misapplied the law, misconceived or overlooked material evidence, or made findings that were clearly wrong." *Id.* (quoting *Pawtucket Transfer Operations*, 944 A.2d at 859).

## Discussion

We begin our discussion by addressing New Castle's assertion that the trial justice erred in searching the record for factual findings after determining that the zoning board "fail[ed] to enumerate specific findings of fact as required by § 45-24-61(a)."

Section 45-24-61(a) requires that "[t]he zoning board * * * include in its decision all findings of fact and conditions[.]" Accordingly, this Court has directed that zoning boards "render a decision containing findings of fact and conclusions of law." *Bellevue Shopping Center Associates v. Chase*, 556 A.2d 45, 46 (R.I. 1989). Furthermore, we have required that a zoning board submit a uniform decision from the board itself. *See id.* (remanding case for decision of board of review where the record showed "varying expressions of opinion" and no agreement by majority as to reason for denying application).

As to the issue of factual findings, this Court has held that "municipal councils and boards acting in a quasi-judicial capacity must make findings of fact and conclusions of law to support their decisions." *Preservation Society of Newport County v. City Council of City of Newport*, 155 A.3d 688, 692 (R.I. 2017) (quoting *Cullen v. Town Council of Town of Lincoln*, 850 A.2d 900, 904 (R.I. 2004)). "The absence of such findings and conclusions precludes judicial review of a council's

decision." *Cullen*, 850 A.2d at 904. In *Bernuth v. Zoning Board of Review of Town of New Shoreham*, 770 A.2d 396 (R.I. 2001), the Court stated:

> "We must decide whether the board members resolved the evidentiary conflicts, made the prerequisite factual determinations, and applied the proper legal principles. Those findings must, of course, be factual rather than conclusional, and the application of the legal principles must be something more than the recital of a litany. These are minimal requirements. Unless they are satisfied, a judicial review of a board's work is impossible." *Bernuth*, 770 A.2d at 401 (brackets omitted) (quoting *Irish Partnership v. Rommel*, 518 A.2d 356, 358-59 (R.I. 1986)).

We disapprove of the procedure employed by the zoning board in the present case; nevertheless, we, similar to the trial justice, are satisfied that the record in this case contains minimally sufficient findings to enable judicial review.

## A

### Special-Use Permit

In applying the principles set forth above, we turn first to the issue of New Castle's application for a special-use permit. On appeal, New Castle asserts that the trial justice misapplied the law and abused his discretion by accepting the zoning board's unsupported conclusions and affirming the denial of the special-use permit. We agree with New Castle that the facts "culled" from the record by the trial justice were insufficient to support the denial of the application for a special-use permit.

- 9 -

We first address New Castle's assertion that the standards utilized by the zoning board to review a special-use permit application "mirror the goals DEM seeks to achieve through its OWTS and wetlands regulations." In reviewing a permit to alter freshwater wetlands, DEM will deny approval of such permit "if, in the opinion of the director, granting of approval would not be in the best public interest." General Laws 1956 § 2-1-21(a)(2). Additionally, DEM enforces its OWTS regulations "to protect public health and the environment[.]" 250 RICR 150-10-6.1. Alternatively, § 218-23(A) of Charlestown's zoning ordinance provides that:

> "A special use permit may be approved by the Board following a public hearing if, in the opinion of the Board, that evidence to the satisfaction of the following standards has been entered into the record of the proceedings:
>
> "(1) The public convenience and welfare will be substantially served;
> "(2) It will not result in adverse impacts or create conditions that will be inimical to the public health, safety, morals and general welfare of the community.
> "(3) The requested special use permit will not alter the general character of the surrounding area or impair the intent or purpose of this Zoning Ordinance or the Comprehensive Plan upon which this Ordinance is based;
> "(4) That the granting of a special use permit will not pose a threat to drinking water supplies;
> "(5) That the use will not disrupt the neighborhood or the privacy of abutting landowners by excessive noise, light, glare, or air pollutants;
> "(6) That the sewage and waste disposal into the ground and the surface water drainage from the proposed use will be adequately handled on site;

"(7) That the traffic generated by the proposed use will not cause undue congestion or introduce a traffic hazard to the circulation pattern of the area."

New Castle asserts that these standards serve the same public interest goals as the OWTS and wetlands regulations utilized by DEM. While both DEM and zoning boards address public interest considerations, not every standard set forth in the zoning ordinance is pertinent to what must be considered by DEM in granting or denying a permit—DEM and zoning boards each serve separate functions.[3] *See Milardo v. Coastal Resources Management Council of Rhode Island*, 434 A.2d 266, 273 (R.I. 1981) ("We have no doubt that the Legislature could have assigned both functions to the same agency. In choosing not to do so, the Legislature doubtless considered the need for special types of expertise in the discharge of the separate but similar functions of both agencies."). We do not fault the zoning board, therefore, for conducting its own independent review.

---

[3] We note, however, that G.L. 1956 § 45-24-30(c) provides:

> "*Upon promulgation of state regulations* to designate wetland buffers and setbacks pursuant to [G.L. 1956] §§ 2-1-18 through 2-1-28, cities and towns shall be prohibited from applying the requirements in existing zoning ordinances pertaining to both wetland buffers and onsite wastewater treatment system setbacks to development applications submitted to a municipality after the effective date of said state regulations." (Emphasis added.)

Significantly, however, such state regulations have not yet been adopted.

- 11 -

This Court has said that, "[w]hile it is generally true that 'there is no talismanic significance to expert testimony and it may be accepted or rejected by the trier of fact,' * * * it is also true that, if expert testimony before a zoning board is competent, uncontradicted, and unimpeached, it would be an abuse of discretion for a zoning board to reject such testimony." *Murphy v. Zoning Board of Review of Town of South Kingstown*, 959 A.2d 535, 542 (R.I. 2008) (brackets omitted) (quoting *Restivo v. Lynch*, 707 A.2d 663, 671 (R.I. 1998)).

There are, of course, situations in which the zoning board members may rely on their own knowledge regarding zoning matters; however, the zoning board must include in its decision the basis on which it rests such knowledge. *See Smith v. Zoning Board of Review of City of Warwick*, 103 R.I. 328, 335, 237 A.2d 551, 555 (1968) (holding that the zoning board gave sufficient reasons for expressly rejecting testimony of experts and acted properly in basing its decision on its own knowledge of premises); *Del Toro v. Zoning Board of Review of Town of Bristol*, 82 R.I. 317, 321, 107 A.2d 460, 462 (1954) (noting that "if [a zoning board] substitutes evidence within its own knowledge or from a view, we have held that there should be something in the decision to inform us of the grounds and basis thereof sufficiently for [the court] to perform our duty without speculation").

In the case before us, however, the zoning board lacked the specialized knowledge necessary to refute DEM's decisions itself—as one member stated at the

hearing, "I'm not a wetlands biologist. I'm not an expert."  In affirming the zoning board's denial of a special-use permit, the trial justice referenced statements made by zoning board members and concluded that there was substantial evidence in the record to support the zoning board's decision.  Specifically, he pointed to the vote by Board Member Chambers to deny the special-use permit based upon his own measurement of the water table and his observation that it was likely to increase in height due to the drainage from the lot across the street from the parcel.[4]

During the proceedings before the zoning board, Chambers asked Greene whether a perc test had been done.  Greene responded that perc tests are no longer required but that a soil evaluation had been performed by a certified soil scientist.  According to Greene, it is a "gravel-based soil" that drains quite well.  Chambers indicated that he had measured the water table himself the previous week and "[i]t came to five-and-a-half feet."  We note, however, that there is no evidence in the record suggesting the source of Chambers's expertise, if any, or the methodology he employed.

The trial justice also referenced Chambers's belief that "the requested relief was insufficient to keep the wetlands safe."  Again, Chambers had taken his own

---

[4] The trial justice attributed these comments to Board Member Quadrato, but it is clear from the transcript that it was Board Member Chambers who made his own measurement of the water table.

measurements and opined that a fifteen-foot relief was necessary, rather than the ten-foot relief approved by DEM.

With respect to Board Member Quadrato's vote to deny the special-use permit, the trial justice referred to his opinion that he "'cannot see how there couldn't be a negative impact on the wetland[s]' and that the requested special-use permit relief 'could pose a threat to drinking water.'" It is our opinion, however, that the impact on the wetlands was the very issue addressed by DEM in granting a permit to alter wetlands and that there is no scientific or expert testimony in the record to suggest that New Castle's proposal would have a negative impact on the wetlands. Moreover, there is no evidence establishing any potential threat to drinking water.

The trial justice also addressed the concerns of Board Member Vanover, particularly noting the latter's comment that the "O.W.T.S. does not reduce all the nitrates—the nitrogen. It has no impact on the phosphates. It doesn't reduce the phosphates, which has more impact on the wetlands than the nitrogen from what I understand." Vanover also expressed his belief that the applicant had not done enough to "mitigate the potential impacts." He thought that composting toilets or a "gray water system * * * would be much better for the wetlands and an extension for the community." He was critical of DEM, characterizing its failure to consider lawns as a "glaring omission[.]" He also stated his concern that the septic system might "create conditions that are inimical to the public health, safety and general

welfare of the community because of the impact the effluent would have on the wetlands."

Although the comments and observations of the board members may all be valid and their diligence in visiting the property and making their own measurements commendable, we believe that an applicant for zoning relief ought to be able to rely on permits granted by DEM with respect to those matters uniquely within DEM's expertise. That is not to say that a zoning board must act as a rubber stamp; clearly it has its own distinct responsibilities. But where, as here, a landowner has secured a permit to alter freshwater wetlands—which is often a long and arduous process— a zoning board may not deny zoning relief based upon a board member's conception of what might have a negative impact on wetlands, absent expert testimony in the record. Similarly, relief should not be denied based upon a board member's belief that a particular septic system would be more beneficial than one approved by DEM, unless that member's belief is firmly grounded upon competent scientific evidence.

Thus, we are of the opinion that the permit granted to New Castle by DEM to alter freshwater wetlands and to construct an OWTS constitutes evidence that New Castle had satisfied all applicable DEM regulations with respect thereto. It is not conclusive evidence, but here there is no contrary competent evidence in the record. The DEM permit approval is, therefore, entitled to deference.

Based upon our review of the trial justice's decision and the record before us, we are satisfied that the reasons espoused by the board members for denying the special-use permit virtually all concern the potential impact of the proposal on the wetlands—concerns that are clearly within the realm of DEM's expertise. We are further of the opinion that substantial evidence does not exist in the record to support either the zoning board's decision to deny the special-use permit or the trial justice's ruling to affirm the same.

**B**

**Dimensional Variances**

The same infirmity does not obtain with respect to the denial of New Castle's application for a dimensional variance. The grant or denial of a dimensional variance is clearly within the purview of a zoning board, and the burden is squarely on the applicant to establish its entitlement to such relief.

A dimensional variance is defined by statute as:

> "Permission to depart from the dimensional requirements of a zoning ordinance, where the applicant for the requested relief has shown, by evidence upon the record, that there is no other reasonable alternative way to enjoy a legally permitted beneficial use of the subject property unless granted the requested relief from the dimensional regulations. However, the fact that a use may be more profitable or that a structure may be more valuable after the relief is granted are not grounds for relief." Section 45-24-31(66)(ii).

In deciding whether to approve or deny a dimensional variance, zoning boards of review

> "shall require that evidence to the satisfaction of the following standards is entered into the record of the proceedings:
>
> "(1) That the hardship from which the applicant seeks relief is due to the unique characteristics of the subject land or structure and not to the general characteristics of the surrounding area; and is not due to a physical or economic disability of the applicant, excepting those physical disabilities addressed in § 45-24-30(a)(16);
> "(2) That the hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain;
> "(3) That the granting of the requested variance will not alter the general character of the surrounding area or impair the intent or purpose of the zoning ordinance or the comprehensive plan upon which the ordinance is based; and
> "(4) That the relief to be granted is the least relief necessary." Section 45-24-41(d).

These requirements also appear in § 218-24 of the Charlestown Zoning Ordinance. This Court has held that "an applicant seeking a dimensional variance has the burden before the zoning board of showing that a factual basis appears in the record to support the proposition that there is 'no other reasonable alternative' that would allow the applicant to enjoy a legally permitted beneficial use of the property." *Bernuth*, 770 A.2d at 401.[5] Furthermore, the hardship must not be "the

---

[5] Although our holding in *Bernuth v. Zoning Board of Review of Town of New Shoreham*, 770 A.2d 396 (R.I. 2001), seems to quote a since-revised version of

- 17 -

result of any prior action of the applicant and [must] not result primarily from the desire of the applicant to realize greater financial gain[.]" Section 45-24-41(d)(2).

We first address the question of whether New Castle's hardship was self-created. The trial justice discounted statements made by at least two zoning board members that the hardship from which New Castle was seeking relief was created by New Castle when it originally subdivided the property in 1974. He reasoned that the subdivision occurred before the zoning ordinance was amended to require a minimum three acre lot size. Thus, the parcel was conforming when the subdivision was originally created by the applicant in 1974.

It is not clear to us, however, upon what basis the zoning board members found that the hardship was self-created by New Castle. One member remarked that "this was a lot that should have never been subdivided as a buildable lot." Another agreed that he did not "see it as being buildable because again the wetlands characteristics of the piece of property[.]" A third member stated that the hardship was self-created by the applicant: "They've been the owner of this property since the very beginning. It was their design. It was their plan. I don't agree that they can blame the town[.]"

---

§ 45-24-41, we quote it here because the requirement for an applicant requesting a dimensional variance to prove "that there is no other reasonable alternative way to enjoy a legally permitted beneficial use of the subject property" remains codified in § 45-24-31(66)(ii).

In light of these comments, it is not clear to us whether the hardship to which the zoning board members referred was created when the zoning ordinance was amended to require a three acre minimum, or when the subdivision was approved in 1974, thereby creating the subject parcel which, albeit conforming at the time, consisted predominantly of wooded swamp with only a relatively small corner suitable for building. We are satisfied, therefore, that proper resolution of this issue would require further factfinding by the zoning board.

The trial justice ultimately affirmed the zoning board's denial of New Castle's application for a dimensional variance, ruling that New Castle had failed to establish that the requested relief was the least relief necessary. In his decision, he adverted to a board member's statement that New Castle was unwilling "to consider suggestions of trying to move the house further back, further away from the wetlands by making it smaller or by just making it a two-bedroom house." The trial justice then referenced part of the transcript of the zoning board hearing to illustrate New Castle's recalcitrance.

Our task is to review the record to determine whether substantial evidence exists to support the trial justice's decision. *See Iadevaia*, 80 A.3d at 870. As did the trial justice, we resort to the transcript of the public hearings. We note that Greene was asked whether a smaller house had been considered, to which he responded, "We felt that the 22x32 was actually quite conservative." When pressed

as to whether they had considered a two-bedroom house, he answered, "No because a two-bedroom house has to have deed restrictions on it. It does affect the value of the real estate." Lampe elaborated, "A two-bedroom house is not a feasible house in this day and age" because they are not popular.

The trial justice concluded that this testimony was in essence fatal to New Castle's request for a dimensional variance because "[t]he marketability and value to a potential buyer of this dwelling are simply not grounds for relief in the granting of a dimensional variance." Section 45-24-41(d)(2) requires evidence that "the hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain[.]" The burden is upon the applicant to show "that there is no other reasonable alternative way to enjoy a legally permitted beneficial use of the subject property[.]" Section 45-24-31(66)(ii). Here, we are satisfied that the trial justice's ruling that New Castle's requested relief does not reflect the least relief necessary is supported by substantial evidence.[6]

_____

[6] We also note that several members of the zoning board alluded to their belief that the proposed placement of the house on the lot would "alter the general character of the surrounding area[,]" a factor that is clearly within the discretionary authority of a zoning board. *See* § 45-24-41(d)(3).

## IV

## Conclusion

For the reasons stated herein, we affirm in part and quash in part the judgment of the Superior Court. The record shall be returned to the Superior Court with our decision endorsed thereon.



# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE

Licht Judicial Complex
250 Benefit Street
Providence, RI 02903

**OPINION COVER SHEET**

| | |
|---|---|
| **Title of Case** | The New Castle Realty Company v. Raymond Dreczko, Jr., in his capacity as member of the Town of Charlestown Zoning Board of Review, et al. |
| **Case Number** | No. 2018-65-M.P.<br>(WC 15-161) |
| **Date Opinion Filed** | April 13, 2021 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Chief Justice Paul A. Suttell |
| **Source of Appeal** | Washington County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Jeffrey A. Lanphear |
| **Attorney(s) on Appeal** | For Plaintiff:<br><br>Kelly M. Fracassa, Esq. |
| | For Defendants:<br><br>Wyatt A. Brochu, Esq. |