**Supreme Court**

No. 2010-278-Appeal.
No. 2010-296-Appeal.
(PC 99-5226)

State of Rhode Island           :

v.                              :

Lead Industries Association, Inc. et al.     :

NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

**Supreme Court**

No. 2010-278-Appeal.
No. 2010-296-Appeal.
(PC 99-5226)

State of Rhode Island         :

v.         :

Lead Industries Association, Inc. et al.    :

Present: Suttell, C.J., Goldberg, Flaherty, and Indeglia, JJ.

**O P I N I O N**

**Chief Justice Suttell, for the Court.** On July 1 2008, this Court issued an opinion in a civil action brought by the State of Rhode Island (plaintiff or state) against various former lead pigment manufacturers[1] and the Lead Industries Association, Inc., thus concluding what is widely considered to be the longest civil jury trial in this state's history. See State v. Lead Industries Association, Inc., 951 A.2d 428, 434, 435 (R.I. 2008). Our decision may have resolved the underlying legal issues, but it did little to end the contention between the parties. In this opinion, we consider appeals from two Superior Court rulings concerning the apportionment of co-examiners' fees in particular and the payment of costs in general.

We first consider the state's appeal from an order of the Superior Court granting the motion of Sherwin-Williams Co., NL Industries, Inc., and Millennium Holdings, LLC (collectively defendants), for the reimbursement of all previously paid fees, costs, and expenses

---

[1] The manufacturer-defendants were Sherwin-Williams Co., NL Industries, Inc., Millennium Holdings, LLC, Atlantic Richfield, Co., American Cyanamid Co. and Cytec Industries, Inc., ConAgra Grocery Products Co., and other "various defendants [that were] added or removed" throughout the history of the underlying case. State v. Lead Industries Association, Inc., No. PC 99–5226, 2007 WL 711824, 2007 R.I.Super. LEXIS 32 (Feb. 26, 2007); see also State v. Lead Industries Association, Inc., 951 A.2d 428, 434 (R.I. 2008).

related to the engagement of the co-examiners. The state argues, <u>inter alia</u>, that as a sovereign entity, it is not responsible for such expenses under the doctrine of sovereign immunity. The defendants contend that the state is liable for all expenses associated with the co-examiners because, as a plaintiff in a civil case, the state voluntarily invoked the jurisdiction of the court, thereby implicitly waiving any claim of sovereign immunity.

We then turn to defendants' appeal from an order denying the motion of Sherwin-Williams Co., NL Industries, Inc., Millennium Holdings, LLC, ConAgra Grocery Products Co., American Cyanamid Co. and Cytec Industries, Inc., and Atlantic Richfield Co.[2] (collectively defendants)[3] for an award of allowable costs under Rule 54(d) of the Superior Court Rules of Civil Procedure and G.L. 1956 § 9-22-5. The defendants assert that the trial justice "bypassed governing legal principles," and, "[i]n effect, * * * treated the [s]tate as having a special status that allows it to avoid costs." Further, defendants argue that the trial justice used an unprecedented "seven-factor test to support its departure from the strong presumption in favor of awarding costs to the prevailing parties," and also that, in using this unprecedented test, "the trial justice manipulated it to reach an unjustifiable result * * *." The state contends that, "through an assessment of costs, [d]efendants seek to curtail the Attorney General's constitutional and common law obligation to protect the health and safety of citizens by initiating future 'public interest' lawsuits," which, the state asserts, would have serious and far-reaching consequences. As such, the state argues that each party should be required to bear its own litigation expenses.

For the reasons set forth in this opinion, we affirm the orders of the Superior Court.

---

[2] Although Atlantic Richfield Co. is included as a defendant in the order denying the motion for costs, it did not join in the appeal to this Court.

[3] For the sake of simplicity, we refer to all the manufacturers involved in these two appeals as "defendants," recognizing that not all the manufacturers who appeal from the order concerning costs are also parties to the appeal concerning co-examiners' expenses.

# I

## Facts and Procedural History

The facts and procedural history of this case can be found in detail in <u>Lead Industries Association, Inc.</u>  In 1999, the Attorney General, on behalf of the state, filed the underlying lawsuit against various former lead pigment manufacturers and Lead Industries Association, Inc., "a national trade association of lead producers formed in 1928." <u>Lead Industries Association, Inc.</u>, 951 A.2d at 434.

The trial concluded in a mistrial, but a second trial "resulted in a verdict that imposed liability on lead pigment manufacturers for creating a public nuisance." <u>Lead Industries Association, Inc.</u>, 951 A.2d at 434.  Following the entry of judgment, the state requested that the abatement process begin immediately and that the trial justice appoint examiners "to aid in the implementation of a complex remedial scheme."  Despite the fact that defendants had filed an appeal on a number of issues, the state insisted on its request for immediate action.  In response to the state's request, defendants moved for a stay of abatement proceedings, which included the appointment of any examiners, while their appeal was pending before this Court.

During a subsequent hearing on defendants' motion to stay, defendants stated that there was "no question that this case and the issues involved [were] issues of first impression, unsettled questions that clearly deserve[d] to be finally treated in the appellate process."[4]  The defendants also argued that, because "the remedy [wa]s only premised on whether the liability [wa]s correct," the abatement proceedings should not move forward until the issues on appeal were resolved by this Court.  The state countered, however, that:

---

[4] We note that the only official transcript submitted to this Court was of the August 15, 2008 hearing; however, copies of the additional relevant transcripts were attached to the parties' appendices.

"[T]here is a continuing threat of harm that exists; exists to children who live in homes that have lead hazards and potential lead hazards. It exists for their families, the property owners, and * * * the citizens of the [S]tate of Rhode Island, the taxpayers of the [S]tate of Rhode Island, the burden to government. That all still exists. And it exists because of the continuing nuisance that is in play.

"* * *

"We believe not wasting time is getting -- denying the stay and getting to the appointment of the special master, dealing with his powers and duties, talking about what's going to be in a remedial order, putting infrastructure in place, or thinking about it at least, so that when a year from now comes and a decision is rendered by the Supreme Court there hasn't been that -- that delay or that that would put it out another year for us to have to get to the same place all over again. And it really isn't that much of an inconvenience to the parties.

"* * *

"To preserve the status quo is to preserve harm to children, basically."

The trial justice asked counsel for the state, "[H]ow would the [c]ourt compensate this special master * * * in the event that the Supreme Court ruled against the [s]tate's position?" The state's counsel replied that, "at this point in time, that should be a matter that the defendants have to pay." Another attorney for the state then added that:

"In the first instance, certainly that special master's fees should be paid by the defendants. In the event that, we think it's highly unlikely, that the Supreme Court would disagree with what Your Honor has ruled over the last eight years, that seems to be something that the defendants could at that point seek potentially as a cost associated with their appeal * * * and could seek reimbursement in that forum."

The trial justice denied the stay and, on June 18, 2007, entered an order in which he declared defendants to be initially jointly responsible for the cost of any appointed examiners but added that the "[f]inal determination of the responsibility for such costs shall be determined by the [c]ourt." Numerous appeals were brought before this Court in 2008. Lead Industries Association, Inc., 951 A.2d at 434. At that time, we held that the trial justice erred when he

- 4 -

failed to grant defendants' motion to dismiss, and we reversed the judgment of abatement. Id. at 458, 480.

In the aftermath of our opinion, several hearings were held before the trial justice on issues relating to the payment of various expenses. On August 15, 2008, the trial justice heard defendants' motion for co-examiners' expenses, as well as defendants' motion for an award of allowable costs. At that hearing, defendants argued that as the prevailing parties, they were entitled to recover their costs from the state. With respect to the payment of co-examiners' fees, they contended that they had been opposed to the engagement of examiners and that "it would be grossly unfair to require the defendants who argued vociferously against the incurring of these costs to now * * * have to bear those costs * * *." The state argued, on the other hand, that the doctrine of sovereign immunity barred the court from requiring the state to pay either costs or co-examiners' fees and also that the state had not waived immunity by filing the lawsuit.

In a written decision issued on January 22, 2009, the trial justice considered the co-examiners' fees issue under Rule 53(a) of the Superior Court Rules of Civil Procedure, which provides, in pertinent part, that "[t]he compensation to be allowed to a master shall be fixed by the court, and shall be charged upon such of the parties * * * as the court may direct." As an additional, independent ground for his ruling, the trial justice stated that, "as a matter of judicial estoppel, this [c]ourt will not allow the [s]tate to renege on its word and argue that it cannot be held responsible for the Co-Examiner expenses for which it had previously lobbied." The trial justice explained that:

> "[D]uring the May 1, 2007 hearing before this [c]ourt, the [s]tate was asked directly who would be responsible for the Co-Examiner expenses should the Supreme Court reverse the decision and vacate the judgment of abatement. * * * In response, the [s]tate presented to this [c]ourt the possibility of reimbursement for those cost[s]. * * * However, now, when faced with the prospect of

responsibility for these costs, the [s]tate has changed its position and is arguing that the Co-Examiner expenses cannot and should not be imposed on the [s]tate. If the [s]tate believed it could not be held responsible for these expenses, it should have expressed this opinion at the May 1, 2007 hearing instead of leading the [c]ourt to believe that, in the event of a reversal, the [d]efendants could seek reimbursement from the [s]tate. The [s]tate's current position concerning its potential responsibility for payment of the Co-Examiner expenses is wholly inconsistent with its previous position, as articulated to the [c]ourt at the May 1, 2007 hearing."

The trial justice determined that, "as a matter of law and fundamental fairness, sovereign immunity will not insulate the [s]tate from responsibility for the [c]o-[e]xaminer expenses." In support of his determination, the trial justice observed that "[t]he [s]tate made a calculated decision to pursue a claim against the [d]efendants and voluntarily participate in the judicial system, and thus may not invoke sovereign immunity to shield it from the imposition of costs." In conclusion, the trial justice stated:

"After due consideration of the arguments advanced by counsel at oral argument and in their memoranda, the [c]ourt has determined that the [s]tate shall be responsible for reimbursement of all costs and expenses associated with the Co-Examiners. * * * Pursuant to [paragraph] 13(a) of the June 18, 2007 Order, the [c]ourt reserved the right to modify it[s] original allocation of Co-Examiner expenses. Here, where the Rhode Island Supreme Court has overturned the jury verdict against the [d]efendants and vacated the judgment of abatement, it would be inappropriate to continue holding the [d]efendants liable for any portion of the Co-Examiner expenses."

An order entered on June 28, 2010, requiring the state to reimburse defendants $242,121.21. The state timely appealed. Also on June 28, 2010, an order entered denying defendants' motion for costs. Final judgment entered on the same date from which defendants timely appealed. We consolidate both appeals for purposes of this opinion.

## II

## Standard of Review

We review a trial justice's determination relative to the allocation of costs pursuant to § 9-22-5 and Rule 54(d), as well as a ruling on the apportionment of co-examiners' expenses under Rule 53(a) of the Superior Court Rules of Civil Procedure, employing an abuse-of-discretion standard. Under § 9-22-5, the prevailing party is entitled to recover costs in a civil action, "except where otherwise specially provided, or as justice may require, in the discretion of the court." Rule 54(d) also specifies that "[c]osts * * * shall be allowed as of course to the prevailing party as provided by statute and by these rules unless the court otherwise specifically directs." As expressly stated, both § 9-22-5 and Rule 54(d) endow the trial justice with discretion in conducting a cost-distribution analysis. "[D]iscretion is not exercised by merely granting or denying a party's request." DiRaimo v. City of Providence, 714 A.2d 554, 557 (R.I. 1998) (quoting Hartman v. Carter, 121 R.I. 1, 4-5, 393 A.2d 1102, 1105 (1978)). The term "discretion," rather, denotes action taken "in the light of reason as applied to all the facts and with a view to the rights of all the parties to the action while having regard for what is right and equitable under the circumstances and the law." Id. (quoting Hartman, 121 R.I. at 5, 393 A.2d at 1105). Likewise, Rule 53(a) provides that "[t]he compensation to be allowed to a master shall be fixed by the court, and shall be charged upon such of the parties * * * as the court may direct."

### III

### Discussion

### A

### Co-Examiners' Fees

On appeal, the state argues that the trial justice erred in reaching his conclusion that the state waived its sovereign immunity because it filed the underlying lawsuit. Additionally, the state contends that the trial justice erred when he ordered it to reimburse defendants for the costs associated with the co-examiners.

According to defendants, the state's argument is flawed because, "irrespective of liability costs at the conclusion of a case, [Rule] 53(a) authorizes the Superior Court to allocate the costs of a special master among the parties at any point during the proceeding." Moreover, defendants contend that "sovereign immunity has no role to play when the state voluntarily invokes the jurisdiction of the court, utilizes its rules and procedures to advance its tactical interest, and is then required by these same rules to pay fees when the issue goes against it."

The state counters that the trial justice's assertion of judicial estoppel was inappropriate because he "placed undue emphasis on the [s]tate's statement to the [c]ourt that [d]efendants could seek reimbursement upon reversal." The state argues that its suggestion to the trial justice that, if he were reversed, defendants "'could at that point seek potentially as a cost associated with their appeal * * * and could seek reimbursement in that forum' * * * is hardly an unequivocal waiver or statement that [d]efendants would be entitled to co-examiner costs if they succeeded on appeal." This, the state further contends, "was merely a factual statement that defendants could file a [m]otion at a time when there was a case or controversy to address, not when there was a hypothetical situation that the trial court itself found unlikely."

The invocation of judicial estoppel is "driven by the important motive of promoting truthfulness and fair dealing in court proceedings." D & H Therapy Associates v. Murray, 821 A.2d 691, 693 (R.I. 2003). "Unlike equitable estoppel, which focuses on the relationship between the parties, judicial estoppel focuses on the relationship between the litigant and the judicial system as a whole." Id. (citing 28 Am. Jur. 2d Estoppel and Waiver § 34 (2000)). "The United States Supreme Court has noted that '[b]ecause the rule is intended to prevent improper use of judicial machinery, * * * judicial estoppel is an equitable doctrine invoked by a court at its discretion.'" Id. (quoting New Hampshire v. Maine, 532 U.S. 742, 750 (2001)). "One of the primary factors courts typically look to in determining whether to invoke the doctrine in a particular case is whether the 'party seeking to assert an inconsistent position would derive an unfair advantage * * * if not estopped.'" Id. at 694 (quoting New Hampshire, 532 U.S. at 751). "Courts often inquire whether the party who has taken an inconsistent position had 'succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled.'" Id. (quoting New Hampshire, 532 U.S. at 750). Here, a review of the record clearly shows that the trial justice predicated his decision—granting the state's request to appoint examiners and ordering defendants jointly responsible for all related expenses—upon the state's representation that defendants could seek reimbursement if the judgment were to be reversed on appeal.

During the hearing on defendants' motion to stay the abatement proceedings, the trial justice specifically questioned the state about which party would be responsible for the expense of the co-examiners. The state responded that "[i]n the first instance," defendants should be responsible for the expenses, but then added that, if the judgment were to be reversed on appeal,

it "seem[ed] to be something that the defendants could at that point seek potentially as a cost associated with their appeal * * * and could seek reimbursement in that forum." As a result, the trial justice denied the stay and reserved final judgment regarding the responsibility for the costs related to the examiners.

Moreover, in the trial justice's decision regarding the allocation of co-examiners' expenses, he explicitly stated that had the state believed that sovereign immunity would shield it from financial responsibility "it should have expressed this opinion at the May 1, 2007 hearing instead of leading the [c]ourt to believe that, in the event of a reversal, the [d]efendants could seek reimbursement from the [s]tate." This statement unmistakably indicates to this Court that, when the trial justice ordered that defendants assume responsibility for these expenses, he substantially relied upon the state's declaration that defendants would be able to seek reimbursement if they succeeded in their appeal.

Because a trial justice has discretion in applying judicial estoppel when he or she finds that a party's inconsistent positions would create an unfair advantage, our review is deferential and considers whether judicial acceptance of that party's subsequent position would be perceived as misleading as to either the first or second court. See Murray, 821 A.2d at 694. We are fully confident that the trial justice in this case was justified in his use of judicial estoppel. We deem the state's initial declaration that defendants could seek reimbursement upon appellate success to be misleading when compared with the state's subsequent sovereign-immunity argument, which would bar any reimbursement to defendants. Therefore, we perceive no error in the trial justice's application of judicial estoppel.[5]

---

[5] Because we hold that the state was judicially estopped from asserting a sovereign-immunity defense against the allocation of costs related to the co-examiners, we need not consider whether

- 10 -

## Costs

With respect to the denial of defendants' motion for costs, defendants argue that the trial justice correctly recognized the presumption of awarding costs to the prevailing party, but erred by disregarding that presumption and instead applying "a purely discretionary standard." The defendants specifically contend that the trial justice not only used an unprecedented "seven-factor test to support [his] departure from the strong presumption in favor of awarding costs to the prevailing parties," but also "manipulated it to reach an unjustifiable result [in this case]."[6] Specifically, defendants assert five errors committed by the trial justice: (1) "failing to apply the proper presumption and burden of proof"; (2) "applying inappropriate cost factors and ignoring relevant ones"; (3) "creating a different standard for the [s]tate than other non-prevailing parties"; (4) "failing to consider facts of record"; and (5) "speculating with respect to facts not of record."

The state counters that the trial justice did not err because he looked at the totality of the circumstances to support his determination that each party should bear its own costs. The state suggests that, although "the narrow issue on appeal may be viewed as which party(s) must bear the cost of litigation, the answer to this question in the context of this case has far-reaching implications." Additionally, the state asserts that, "through an assessment of costs, [d]efendants

---

the trial justice erred in his determination that the state waived its sovereign immunity by initiating litigation.

[6] The defendants suggest that the trial justice considered the following seven factors: (1) "The financial need of the prevailing party for reimbursement"; (2) "The burden that the imposition of costs would have on a non-affluent, non-prevailing party"; (3) "Any bad faith or misconduct by the prevailing party"; (4) "Good faith of the plaintiff in bringing the action"; (5) "Whether the action provided any direct or indirect benefit to the public or the victorious party"; (6) "The complexity of the matter"; and (7) "Whether imposition of costs would unduly inhibit future litigation." We, however, decipher only four factors that the trial justice weighed, which are discussed infra.

seek to curtail the Attorney General's constitutional and common law obligation to protect the health and safety of citizens by initiating future 'public interest' lawsuits."

The trial justice acknowledged the presumption in favor of awarding costs to the prevailing party under Rule 54(d), noting, however, that such an award is discretionary. The trial justice, quoting DLC Management Corp. v. Town of Hyde Park, 45 F. Supp. 2d 314, 315 (S.D.N.Y. 1999), explained that costs may be denied "upon a showing that such an award would be inequitable." Further, he looked to the following factors: (1) whether the state's claim was frivolous; (2) whether the state proceeded in good faith; (3) whether the award of costs "could have a chilling effect on future suits by the public raising public health or environmental concerns"; and (4) whether "substantial benefits" were conferred on "the public and the prevailing parties."[7] As this Court has stated, a trial justice exercises proper discretion when the final determination is "in the light of reason as applied to all the facts and with a view to the rights of all the parties to the action while having a regard for what is right and equitable under the circumstances and the law." Hartman, 121 R.I. at 5, 393 A.2d at 1105.

In his written decision, the trial justice analyzed the totality of the circumstances and found the following: (1) that the state's claim was not frivolous or made in bad faith; (2) that the public had a heightened interest because of the physical and environmental problems lead paint presented; (3) that assigning all costs to the state could act as a penalty and deter future environmental suits; and (4) that both the public and defendants substantially benefited from the commencement of the litigation. As a result, the trial justice held that both the state and defendants were responsible for bearing their own costs.

---

[7] The trial justice also noted "the severe financial position of the [s]tate"; however, he expressly clarified that this was not a basis for his decision in this case.

- 12 -

After a careful review of the record, we are satisfied that the trial justice did not overlook or misconceive the facts of this case, nor did he apply those facts inappropriately to the factors he used in reaching his conclusion. Although we need not endorse each specific factor he utilized, we conclude that he carefully considered the totality of the circumstances as well as the equities, given the significant history and multitude of issues involved in this important case. As such, we are satisfied that the trial justice's denial of the defendant's motion for costs was not clearly erroneous. Accordingly, we will not disturb the ruling of the trial justice, who conscientiously and meticulously presided over this very lengthy and complex litigation.

## IV

## Conclusion

For the reasons set forth in this opinion, we affirm the orders of the Superior Court. The record of this case shall be remanded to the Superior Court.

Justice Robinson did not participate.


**TITLE OF CASE:**        State of Rhode Island v. Lead Industries Association, Inc. et al.

**CASE NO:**        No. 2010-278-Appeal.
No. 2010-296-Appeal.
(PC 99-5226)

**COURT:**        Supreme Court

**DATE OPINION FILED:**  May 10, 2013

**JUSTICES:**        Suttell, C.J., Goldberg, Flaherty, and Indeglia, JJ.

**WRITTEN BY:**        Chief Justice Paul A. Suttell

**SOURCE OF APPEAL:**      Providence County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Michael A. Silverstein

**ATTORNEYS ON APPEAL:**

For Plaintiff:  Michael W. Field
Department of Attorney General

For Defendants The Sherwin-Williams Co., NL Industries, Inc.,
and Millennium Holdings, LLC:
John A. MacFadyen, Esq.

For Defendants The Sherwin-Williams Co., NL Industries, Inc.,
Millennium Holdings, LLC., ConAgra Grocery Products Co.,
American Cyanamid Company and  Cytec Industries, Inc.:
Laura B. Ellsworth, Esq., Pro Hac Vice