**Supreme Court**

No. 2011-338-M.P.
(PC 09-1565)

Steven Iadevaia                                                :

v.                                                :

Town of Scituate Zoning Board of Review.        :

NOTICE:   This opinion is subject to formal revision before
publication in the Rhode Island Reporter. Readers are requested to
notify the Opinion Analyst, Supreme Court of Rhode Island, 250
Benefit Street, Providence, Rhode Island 02903, at Telephone 222-
3258 of any typographical or other formal errors in order that
corrections may be made before the opinion is published.

Steven Iadevaia                                        :

v.                                        :

Town of Scituate Zoning Board of Review.          :

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Chief Justice Suttell, for the Court.** This Court issued a writ of certiorari to review a judgment of the Superior Court affirming a decision by the Town of Scituate Zoning Board of Review (zoning board). The petitioner, Steven Iadevaia, had applied to the Scituate Building Official for a building permit, which was denied due to, inter alia, a lack of street frontage. The petitioner then appealed the building official's denial to the zoning board and, alternatively, applied for a dimensional variance. The zoning board denied both the petitioner's appeal and his request for a dimensional variance, and the Superior Court affirmed. For the reasons set forth in this opinion, we vacate the judgment of the Superior Court.

## I

### Facts and Procedural History

The petitioner is the owner of a 9.09-acre parcel of land (the parcel), located east of Chopmist Hill Road in the Town of Scituate (town). The parcel was conveyed to him by his parents on February 26, 1982, by a deed describing the parcel as "[a] certain lot or tract of woodland," and then describing the boundaries of the property by its contiguous landowners. The deed continued:

> "However otherwise bounded and described, said lot is
> comprised of those two certain lots of land on the easterly side of

- 1 -

> Chopmist Hill Road as are numbered 1 (one) and 2 (two) in the Division of the Estate of Ezekiel Bishop, late of the Town of Scituate, deceased, and recorded in Scituate Land Records in Plat Book 1 at page 19."[1]

This latter reference is to a plat map recorded in 1848 depicting the 9.09-acre parcel as two discrete, landlocked lots. When the town adopted a zoning ordinance on December 30, 1965, it implemented the tax assessor's map as the zoning ordinance map. Unlike the 1848 plat map which depicted petitioner's parcel as two separate lots, the tax assessor's map identified the parcel as Assessor's Plat No. 35, lot No. 24, a single, 9.09-acre lot of land.

In 1983, petitioner's neighbors, Serafino and Anna Raponi, requested a dimensional variance from the zoning board in order to sell a fifty-foot strip of land to petitioner. The petitioner appeared before the zoning board and stated that he needed the strip of land to access his adjacent, landlocked parcel, on which he wanted to build a house.[2] On October 25, 1983, the zoning board granted the variance to the Raponis; they then sold the land to petitioner, thereby providing him access to his property from Chopmist Hill Road.

In 2006, petitioner appeared before the Town of Scituate Plan Commission (plan commission) and applied for a subdivision of his 9.09 acres into two separate lots. Notwithstanding the fact that he applied for the subdivision, petitioner contends that he was simply clarifying to the plan commission the existence of two lots, as described in his deed and as depicted in the 1848 plat map. In support of his contention, petitioner referenced a

---

[1] The petitioner submitted to the zoning board six previous deeds recorded as far back as 1929, each of which contain nearly identical descriptions of the property.

[2] The minutes from the 1983 zoning board meeting read, in part:

> "[Petitioner] said he wants to purchase a 50′ strip of land to have access to his 9 acres which is land locked [sic]. He wants to build a house in the future. * * * Hans Bergey asked how long [petitioner] has owned his lot? He said his parents gave it to him in 1982 and his parents has [sic] owned since 1971."

memorandum from the building official, David Provonsil, to the plan commission dated March 16, 2006, stating that he (Provonsil) believed that petitioner's property has "probably" always contained two lots.[3] Minutes from the 2006 plan commission meeting read, in part:

> "[Petitioner] explained that his father purchased this piece and a lot with the school on Chopmist Hill Road. [Building Official] David Provonsil explained that each of the original lots have a description in the deeds. David Provonsil made a motion to send correspondence to the Tax Assessor regarding the reestablishment of Plat 34 Lot 24 to [two] separate lots as the 1848 recorded plat."

The plan commission granted the application, resulting in the creation of Plat No. 35, lot No. 65 (the unimproved lot), as identified on the 2006 tax assessor's map. The petitioner's lot No. 24 (the improved lot), which had previously encompassed the entire 9.09 acres, now consists of roughly five acres and contains petitioner's house, accessible from Chopmist Hill Road by way of the fifty-foot strip of land purchased from the Raponis in 1983. The newly recognized, approximately four-acre unimproved lot directly adjacent to the improved lot, is landlocked.

On October 21, 2008, petitioner submitted an application to the Scituate Building Official to build a single-family home on the unimproved lot. On October 28, 2008, the building official denied petitioner's request. The building official cited numerous deficiencies with petitioner's proposed plans, including a lack of street frontage. The building official found that the unimproved lot "[h]as no street frontage, therefore no width[,] therefore is not eligible for a Building Permit under Article IV – Section 3 of the Zoning Ordinance."[4]

---

[3] The memorandum states in part: "[petitioner's property] probably has '2 lots' – because of recorded plat; Even though 50's/60's Assessor map shows [one lot] they cannot merge; Town would need 'proof/possitive' [sic] that an Owner of Record asked lots to be merged."

[4] Article IV – Section 3 of the Town of Scituate Zoning Ordinance, entitled "Substandard lots of record," provides in pertinent part:

> "Except for lots on recorded plats which have received final approval from the plan commission pursuant to the ordinance and rules and regulations governing and restricting the platting and

The petitioner then filed an appeal to the Town of Scituate Zoning Board of Review, arguing that the zoning ordinance does not mandate frontage and that the unimproved lot met all the dimensional requirements in its particular zoning district (RR-120).[5]  Alternatively, in the event that the zoning board determined that there is a frontage requirement, petitioner applied for a dimensional variance for lot width and height on the unimproved lot.  On January 27, 2009, the zoning board held a hearing for the two companion cases.  The zoning board unanimously denied both petitioner's appeal and request for variance, and on February 27, 2009, issued its findings of fact in an eight-page written decision.

In denying petitioner's appeal, the zoning board determined that the building official was correct in his conclusion that the zoning ordinance contains a frontage requirement.  The dimensional regulations for zoning district RR-120 do not explicitly require frontage, but the zoning board extrapolated a frontage requirement from the "lot width" requirement.  Article IX(45) of the Town of Scituate Zoning Ordinance defines "lot width" as "[t]he horizontal distance between the side lines of a lot measured at right angles to its depth along a straight line parallel to the front lot line at the minimum front setback line"; "front lot line" is defined as "[t]he lot line separating a lot from a street right of way." Id. Art. IX(43)(a).  Reading these two definitions together, the zoning board concluded that "a lot must possess frontage although there is no minimum dimension."  The zoning board reasoned that because the unimproved lot is landlocked, it has "no lot line that exists along a street right-of-way, thus, [it] has no frontage * * * ."  The zoning board therefore upheld the building official's denial of a building permit.

---

other subdivision of land, no lot area shall be reduced below the dimensional requirements prescribed for the district in which the lot is located."

[5] The petitioner did not appeal the other deficiencies to the zoning board, and thus those issues were not before the Superior Court.

In addition to denying petitioner's appeal, the zoning board also denied petitioner's application for a height and width dimensional variance.[6] The zoning board found that it was petitioner's application for a subdivision to the plan commission in 2006 that resulted in the landlocked unimproved lot, thereby creating the hardship, i.e., the lack of frontage, necessitating the variance. Additionally, the zoning board found that petitioner had "already received the benefit of zoning relief" when he purchased the strip of land from the Raponis in 1983 to construct a house.[7] With respect to the issue of merger, the zoning board ruled:

> "[W]hile the record of evidence is not clear as to whether or not the two smaller lots were merged by [petitioner] or his predecessors in title, (there is no municipal merger ordinance/requirement), [petitioner] clearly believed that he had a single 9.09 acre parcel in 1983 when he [sic] applied for [z]oning relief to build his residence.[8] The relief granted to [petitioner] in 1983 was based on [petitioner's] testimony that he had a 9.09 acre woodland lot which was landlocked (hence the request for the 50′ strip of land for access). Therefore, the issue of merger is not dispositive to the [b]oard's decision."

On March 18, 2009, petitioner filed a complaint in Superior Court appealing the zoning board's denial of both his appeal of the building official's decision and his request for a dimensional variance,[9] and on April 19, 2010, the trial justice issued a written decision upholding both of the zoning board's rulings. The trial justice agreed with the zoning board's interpretation of the ordinance as requiring frontage and found that petitioner's parcel did not have the frontage required. With respect to the dimensional variance, the trial justice found that

---

[6] The petitioner did not appeal the denial of a height variance to the Superior Court.

[7] The zoning board noted that, despite the plan commission's grant of the subdivision, it "did not grant the [petitioner] the right to apply to the [zoning board] for a variance on property he's already using as a single-family residence" and, even if it had, the zoning board was not bound by the plan commission's decision to subdivide the property.

[8] We note that it was not petitioner who filed for zoning relief in 1983; rather it was the Raponis, albeit for the benefit of petitioner.

[9] "An aggrieved party may appeal a decision of the zoning board of review to the [S]uperior [C]ourt for the county in which the city or town is situated * * * ." G.L. 1956 § 45-24-69(a).

the zoning board had correctly concluded that petitioner's unimproved lot was not a buildable lot because (1) the plan commission did not create a lot for purposes of the zoning ordinance, and (2) petitioner "failed to submit satisfactory evidence that he did not create his own hardship because of his prior actions * * * ."

On January 7, 2011, the trial justice granted petitioner's motion for reconsideration of her decision, but on June 16, 2011, she issued a second written decision in which she declined to vacate the April 19, 2010 decision. In his motion for reconsideration, petitioner asserted that he had always owned and treated the 9.09-acre parcel as containing two separate lots and that the two lots had never merged. The trial justice disagreed, finding that "there is ample evidence on the record that supports the [z]oning [b]oard's finding that [petitioner] treated his property as one lot."[10] She also reiterated her original finding that petitioner's 2006 subdivision was a self-created hardship. The trial justice then invoked the doctrine of judicial estoppel, precluding petitioner from arguing that the zoning board should have determined that the parcel had always consisted of two lots and had never merged.

On September 30, 2011, the trial justice entered final judgment in accordance with Rule 54 of the Superior Court Rules of Civil Procedure. The petitioner then filed a petition for a writ of certiorari, which this Court granted on February 2, 2012. Before us, petitioner argues that: (1) the two lots on his property are separate and have never merged; (2) without such a merger, petitioner could not have created his own hardship; (3) the zoning ordinance does not contain a dimensional requirement for lot frontage; (4) the zoning board's use of the "lot width" definition to impose a frontage requirement violates Rhode Island Supreme Court precedent; (5) assuming the zoning ordinance does require frontage, he is entitled to dimensional relief for the landlocked

---

[10] The trial justice specifically referred to the 1965 zoning map, the property deed, petitioner's testimony before the zoning board in 1983, and the ownership history of the property.

lot; (6) he never treated his property inconsistently and the trial justice's invocation of judicial estoppel was an abuse of discretion; and (7) the trial justice abused her discretion by relying on evidence not advanced by the zoning board.

## II

### Standard of Review

The Superior Court's authority to review a zoning board's decision derives from G.L. 1956 § 45-24-69(d), which provides:

> "The [Superior] [C]ourt shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:
> "(1) In violation of constitutional, statutory, or ordinance provisions;
> "(2) In excess of the authority granted to the zoning board of review by statute or ordinance;
> "(3) Made upon unlawful procedure;
> "(4) Affected by other error of law;
> "(5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record, or;
> "(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."

"On a petition for certiorari from a Superior Court judgment that has entered after an appeal from a municipal zoning board's decision, we confine our review to a determination of whether the trial justice acted within his or her authority as set forth in § 45-24-69." Sciacca v. Caruso, 769 A.2d 578, 582 (R.I. 2001). When reviewing a trial court's zoning decision, this Court "[does] not weigh the evidence; instead we review the record to determine whether substantial evidence existed to support the Superior Court justice's decision." Pawtucket Transfer Operations, LLC v. City of Pawtucket, 944 A.2d 855, 859 (R.I. 2008) (quoting OK Properties v. Zoning Board of

Review of Warwick, 601 A.2d 953, 955 (R.I. 1992)). Substantial evidence is defined as "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means [an] amount more than a scintilla but less than a preponderance." Id. (quoting Caswell v. George Sherman Sand & Gravel Co., 424 A.2d 646, 647 (R.I. 1981)). "We do not reverse a Superior Court justice's decision unless it can be shown that the justice misapplied the law, misconceived or overlooked material evidence, or made findings that were clearly wrong." Id. (quoting von Bernuth v. Zoning Board of Review of New Shoreham, 770 A.2d 396, 399-400 (R.I. 2001)).

A trial justice has the discretion to invoke judicial estoppel "when he or she finds that a party's inconsistent positions would create an unfair advantage." State v. Lead Industries Association, Inc., 69 A.3d 1304, 1310 (R.I. 2013). Therefore, "our review is deferential and considers whether judicial acceptance of that party's subsequent position would be perceived as misleading as to either the first or second court," id. at 1310-11, and this Court will not disturb a trial justice's invocation of judicial estoppel absent an abuse of discretion.

### III

### Analysis

### A

### Judicial Estoppel

This Court has often recognized the judicial estoppel doctrine. See, e.g., Gaumond v. Trinity Repertory Co., 909 A.2d 512, 519 (R.I. 2006); D & H Therapy Associates v. Murray, 821 A.2d 691, 693-94 (R.I. 2003). We have also applied the principle of judicial estoppel to zoning cases. See Pascalides v. Zoning Board of Review of Cranston, 97 R.I. 364, 369, 197 A.2d 747, 751 (1964) (precluding applicant from claiming his parcel was two separate lots after having

previously treated the parcel as one lot to obtain zoning relief). "The invocation of judicial estoppel is 'driven by the important motive of promoting truthfulness and fair dealing in court proceedings.'" Lead Industries Association, Inc., 69 A.3d at 1310 (quoting D & H Therapy Associates, 821 A.2d at 693). "Unlike equitable estoppel, which focuses on the relationship between the parties, judicial estoppel focuses on the relationship between the litigant and the judicial system as a whole." Id. (quoting D & H Therapy Associates, 821 A.2d at 693). "Because the rule is intended to prevent improper use of judicial machinery, * * * judicial estoppel is an equitable doctrine invoked by a court at its discretion." Gaumond, 909 A.2d at 519 (quoting New Hampshire v. Maine, 532 U.S. 742, 750 (2001)). "One of the primary factors courts typically look to in determining whether to invoke the doctrine in a particular case is whether the party seeking to assert an inconsistent position would derive an unfair advantage * * * if not estopped." Lead Industries Association, Inc., 69 A.3d at 1310 (quoting D & H Therapy Associates, 821 A.2d at 694). We have further stated that:

> "Courts often inquire whether the party who has taken an inconsistent position had succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled." Id. (quoting D & H Therapy Associates, 821 A.2d at 694).

In the case under review, the trial justice concluded that the zoning board's findings of fact that petitioner treated his land as a single lot prior to the 2006 subdivision proceedings was clearly based upon substantial evidence in the record. The trial justice specified the following items of evidence available to the zoning board: the 1965 zoning map depicting petitioner's parcel as a single lot; petitioner's deed describing the parcel as "a certain lot or tract of woodland"; petitioner's 1983 testimony before the zoning board in which he referred to the parcel in the singular as "it" and "his lot"; and the ownership history of the parcel. The trial

- 9 -

justice found that "[t]hese factors, in their totality, legitimately raised a question for the [z]oning [b]oard with respect to whether [p]laintiff treated his land one way before the zoning board, and then after getting zoning relief, proceeded to treat his land in an inconsistent manner." In light of this evidence, the trial justice precluded petitioner from "asserting that the [z]oning [b]oard should have found the subject property always consisted of two lots." We deem this to be error.

We have scoured the record, as we are required to do when reviewing a case on certiorari, Huntley v. State, 63 A.3d 526, 530 (R.I. 2013), and we conclude that the evidence before the zoning board was simply too tenuous to support the application of the doctrine of judicial estoppel under the circumstances of this case. We first note that the 1965 zoning map is irrelevant to the inquiry of how petitioner treated the parcel in question. The adoption of the zoning ordinance and corresponding maps predate petitioner's acquisition of the parcel by over sixteen years, and there is no evidence in the record suggesting that any of his predecessors in title affirmatively sought to merge the two lots. Moreover, both petitioner and the zoning board acknowledge that the zoning ordinance has never contained a merger provision and that, therefore, the two lots did not merge by operation of law.

We also conclude that the deeds to the property are of little assistance. Although it is true that all deeds from 1929 on describe the property in the singular as "a certain lot or tract of woodland," they also consistently identify the property as consisting of "two certain lots of land" as depicted in the Ezekiel Bishop plat map.[11]

---

[11] Although this Court has not specifically decided whether verbal or written property descriptions trump a reference to a plat map, we have addressed deed description and lot designation generally. This Court held that what constitutes a "lot" for zoning purposes is a question of fact and that, while persuasive, tax assessor's maps are not conclusive in that determination. Sanfilippo v. Board of Review of Middletown, 96 R.I. 17, 20, 188 A.2d 464, 466 (1963). As for a reference to a plat map contained in a deed, "when a plat is referred to in a deed, for a description of the premises intended to be conveyed, it becomes for this purpose a

- 10 -

It is also our considered opinion that petitioner's testimony before the zoning board in 1983 is far too slender a thread with which to weave the preclusive fetters of judicial estoppel. We initially observe that it is somewhat of a misnomer to characterize the evidence before the zoning board as petitioner's "testimony." The evidence in question is the minutes of the zoning board meeting of October 25, 1983, at which the board considered the application of Serafino and Anna Raponi. The minutes do not purport to contain a verbatim transcription of petitioner's presentation, although they do indicate that the proceedings were tape-recorded and that petitioner was sworn. Rather, the minutes summarize petitioner's "testimony," in total, as follows:

> "[Petitioner] (sworn in) said he wants to purchase a 50′ strip of land to have access to his 9 acres which is land locked [sic]. He wants to build a house in the future.
> "Chairman Sprague asked why 50′? [Petitioner] said he wants to have enough room so that he can maintain his driveway and plant trees all along the drive.
> "Chairman Sprague asked how far the house is from the strip of land? [Petitioner] said about 100′.
> "Hans Bergey asked about how long [petitioner] has owned his lot? He said his parents gave it to him in 1982 and his parents has [sic] owned since 1972."

We believe that the trial justice and zoning board have placed far too great an emphasis on petitioner's purported use, as chronicled by the scrivener of the zoning board hearing, of the singular pronoun "it" to describe his property, and to draw therefrom the conclusion that he

---

part of the deed." Catalano v. Woodward, 617 A.2d 1363, 1366 (R.I. 1992) (quoting Kenyon v. Nichols, 1 R.I. 411, 414 (1851)). Furthermore, when interpreting the language of a deed (as well as the plat maps referenced therein), "this [C]ourt 'will consider all of the facts and circumstances existing at the time of its execution * * * and effect will be given to the intention of the parties whenever that intent can be ascertained.'" Id. (quoting Sullivan Granite Co. v. Vuono, 48 R.I. 292, 294-95, 137 A. 687, 688 (1927)); see Gammons v. Caswell, 447 A.2d 361, 364 (R.I. 1982) (upholding a trial justice's ruling in an adverse possession case based in large part on the identification of the subject property on a plat map, as well as the description of the property in the deed, which was by reference to a tax assessor's map).

created his own hardship when he obtained a subdivision from the plan commission in 2006. We agree with petitioner that a casual reference to his property by the word "it" in this context does not constitute an assertion that he owned the entire 9.09-acre parcel as a single lot.

Accordingly, we are satisfied that there is not substantial evidence in the record to support the zoning board's decision that petitioner "clearly believed that he had a single 9.09 acre parcel in 1983." We hold, therefore, that the trial justice erred by applying the doctrine of judicial estoppel to prevent petitioner from arguing that his property always existed as two separate lots.

**B**

**Merger**

We turn next to petitioner's contention that the unimproved lot and the improved lot are two separate, lawfully created lots that have never merged. The petitioner argues that the parcel has always consisted of two lots because "[n]o evidence exists that any owner voluntarily merged the lots and the Zoning Ordinance does not contain a merger provision." We agree.

Cities and towns in Rhode Island have the power to promulgate and regulate the merger of contiguous lots by "specify[ing] the standards, on a district by district basis, which determine the mergers." Section 45-24-38. Both petitioner and the zoning board acknowledge that the Scituate Zoning Ordinance does not contain a merger provision. Because Scituate does not have a provision for the merger of contiguous properties, in order to merge such lots, a property owner must apply for a subdividision. Scituate, Code of Ordinances, ch. 14, art. II, sec. 14-27.[12] The subdivision and land regulations of the Town of Scituate require a landowner to submit a proposal to the plan commission and gain approval before subdividing or merging his property.

_____

[12] "Any adjustment to existing lot lines of a recorded lot by any means shall be considered a subdivision." Scituate, Code of Ordinances, ch. 14, art. II, sec. 14-27.

- 12 -

Id. sec. 14-28(a).[13] Therefore, in the absence of a merger provision or an affirmative act by a landowner to merge his or her property, two lots do not merge automatically.

It does not appear to us that there was substantial evidence before the zoning board demonstrating that the two lots, as depicted on the 1848 plat map, ever merged. The zoning board seemingly recognized that the property originally consisted of two lots that at some point in time had merged. As the zoning board explained, "the record of evidence is not clear as to whether or not the two smaller lots were merged by [petitioner] or his predecessors in title." Additionally, all of the six deeds submitted to the zoning board contained the contradictory language "a certain lot or tract of woodland * * * comprised of those two certain lots of land."

In her decision, the trial justice affirmed the zoning board's finding that petitioner created his own hardship by applying for a subdivision in 2006 and creating a landlocked lot. However, as petitioner correctly contends, but for the purported merger, he would not have needed to appear before the plan commission in 2006 to subdivide his property,[14] and, therefore, he could not have created his own hardship by subdividing property that already consisted of two lots. Because the trial justice never addressed this contention in her first decision, petitioner again raised the issue in a motion for reconsideration, which the trial justice granted. However, after reconsideration, the trial justice once again failed to address the merger issue, instead focusing her analysis on the "ample evidence on the record that supports the [z]oning [b]oard's finding that [petitioner] treated his property as one lot." Based largely on petitioner's 1983 appearance

---

[13] Section 14-28(a) provides, in pertinent part:
> "There shall be no subdivision (as defined herein and in Title 45, Chapter 23 of the General Laws) of any lot, tract or parcel of land within the town * * * without the prior submission to, and approval of, the Plan Commission of a plan of such subdivision * * * ."

[14] The petitioner claims that he appeared before the plan commission "to correct the administrative mistake the Scituate Tax Assessor made depicting [his] two (2) lots on its tax map as only one (1) parcel."

before the zoning board in which he described his property by the singular pronoun "it," the trial justice concluded that he "represented his land as a single parcel." The trial justice then stated that whether "the 9.09 acre parcel actually consisted of one or two separate lots dating back to 1848, is of no importan[ce] to this matter * * *," and proceeded to invoke the doctrine of judicial estoppel to prevent petitioner from advancing his merger argument.

As discussed supra, we are satisfied that the trial justice abused her discretion by applying the doctrine of judicial estoppel and preventing petitioner from arguing that his property has always existed as two separate lots. Moreover, we are of the opinion that there was not substantial evidence before the zoning board to support its findings that the two lots had merged (either by petitioner or by a predecessor in title) and that petitioner "clearly believed that he had a single 9.09 acre parcel." Accordingly, we are satisfied that the record demonstrates that petitioner's property originally consisted of two lots, as depicted in the 1848 plat map, and that there is not substantial evidence that they were ever merged.

## C

### Frontage Requirement

The petitioner argues that the zoning ordinance does not mandate a frontage requirement and that the zoning board's interpretation of the ordinance imposing such a requirement was in error. The zoning ordinance requires that residential properties in zoning district RR-120 meet certain requirements for the following dimensions: lot size; lot width; front yard depth; side yard depth; rear yard depth; building coverage; and building height. Scituate Zoning Ordinance, App. A, art. III, § 1. A key issue in this case is the width of petitioner's unimproved lot. In upholding the building official's denial of a building permit, the zoning board found that the unimproved lot does not meet the ordinance's minimum 300-foot width requirement. The board made this

determination despite the fact that the unimproved lot contains over 700 feet of horizontal distance between its two side lines.[15]  To reach this conclusion, the board looked to the definitions section of the ordinance, which defines "lot width" as "[t]he horizontal distance between the side lines of a lot measured at right angles to its depth along a straight line parallel to the front lot line at the minimum front setback line." Id. at art. IX(45).  The board continued its analysis by looking to the definition of "front lot line," defined in the ordinance as "[t]he lot line separating a lot from a street right-of-way." Id. at art. IX(43)(a).  The board therefore concluded that, because the unimproved lot is landlocked, "there is no lot line that exists along a street-right-of-way, thus, [the unimproved lot] has no frontage and therefore no front setback." Based upon an interpretation of both definitions, the board stated that the ordinance "clearly has a minimum standard that a lot must possess frontage although there is no minimum dimension."

This Court reviews the construction of a zoning ordinance, as we review all issues of statutory construction, in a de novo manner. Pawtucket Transfer Operations, LLC, 944 A.2d at 859.  "[A] zoning board's determinations of law * * * 'are not binding on the reviewing court; they may be reviewed to determine what the law is and its applicability to the facts.'" Id. (quoting Gott v. Norberg, 417 A.2d 1352, 1361 (R.I. 1980)).  Based on our de novo review, we hold that the zoning ordinance does not require frontage in zoning district RR-120.  Because the language of the ordinance clearly and unambiguously delineates the dimensional requirements, we apply the plain meaning of the requirements in the context of the entire ordinance. See Peloquin v. Haven Health Center of Greenville, LLC, 61 A.3d 419, 425 (R.I. 2013).  The definitions section defines scores of terms contained throughout the ordinance, including: lot depth; lot frontage; lot line; front lot line; lot width; and setback lines. Scituate Zoning

---

[15] The dimensions of the trapezoidal unimproved lot, are 165′ x 746′ x 328′ x 752′, with the 746′ side bordering petitioner's lot No. 24.

Ordinance, App. A, art. IX(41), (42), (43), (43)(a), (45). The ordinance defines "lot frontage" as "[t]hat portion of a lot abutting a street. Frontage must be contiguous to be considered with regard to minimum frontage requirements." Id. at art. IX(42). By defining the term "lot frontage," the ordinance clearly contemplates a frontage requirement for certain properties.[16] Although the ordinance explicitly requires that certain other classes of properties contain minimum frontage,[17] the dimensional requirements for zoning district RR-120 entirely omit any reference to frontage. Id. at art. III, § 1. Because the ordinance clearly requires frontage in certain situations, the omission of a frontage requirement in district RR-120 leads us to conclude that, notwithstanding the board's interpretation, no such frontage requirement exists. We decline to read into the ordinance a requirement that the drafters of the ordinance clearly omitted.

## IV

### Conclusion

For the reasons stated herein, we vacate the judgment of the Superior Court. The record shall be remanded to the Superior Court with directions to remand the case to the Scituate Zoning Board of Review for a new hearing. Consistent with this opinion, the zoning board shall treat the unimproved lot as a separate lot, and it shall not apply a frontage requirement to the petitioner's application for a building permit.

---

[16] This point is underscored by the use of the words "minimum frontage requirements" in the definition of "lot frontage."

[17] See, e.g., Scituate Zoning Ordinance, App. A, art. VIII, sec. 4.A. ("[a] compound shall include not more than three (3) single-family dwelling units having frontage in common on a public road and sharing a private access road held in common"); id., §4.E.(2). ("[t]he minimum frontage on the entire compound on a public highway shall be at least fifty (50) feet") (emphases added).

- 16 -



**RHODE ISLAND SUPREME COURT CLERK'S OFFICE**

*Clerk's Office Order/Opinion Cover Sheet*

TITLE OF CASE:       Steven Iadevaia v. Town of Scituate Zoning Board of Review.

CASE NO:             No. 2011-338-M.P.
                     (PC 09-1565)

COURT:               Supreme Court

DATE OPINION FILED:  December 23, 2013

JUSTICES:            Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

WRITTEN BY:          Chief Justice Paul A. Suttell

SOURCE OF APPEAL:    Providence County Superior Court

JUDGE FROM LOWER COURT:

                     Associate Justice Susan E. McGuirl

ATTORNEYS ON APPEAL:

                     For Petitioner:  Brian LaPlante, Esq.

                     For Respondent:  Dianne L. Izzo, Esq.